## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## WEST PALM BEACH DIVISION

**Class Action: Case No.**

| | |
|---|---|
| RHONDA SMALL, on behalf of herself and all others similarly situated, <br><br>          Plaintiff, <br><br> vs. <br><br> GENERAL MOTORS LLC, a Delaware limited liability company, <br><br>          Defendant. | **CLASS ACTION COMPLAINT** <br><br> **DEMAND FOR JURY TRIAL** |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Rhonda Small ("Plaintiff"), by and through her undersigned attorneys, brings this class action against Defendant General Motors LLC ("GM" or "Defendant"), based on Plaintiff's personal knowledge as to allegations pertaining to Plaintiff and on information and belief as to all other matters, and based on an investigation by Plaintiff's Counsel, and alleges as follows:

## INTRODUCTION

1.      This consumer class action arises out of a defect in the tail lamp assembly of GM Model Year 2017-2019 Yukon, Yukon XL, Yukon Denali, and Yukon Denali XL vehicles ("Class Vehicles") whereby the tail lamps or particular components within the tail lamp housing or assembly become inoperative ("Tail Lamp Assembly Defect" or "Defect").  This is a serious safety defect in that failure of the tail lamp assembly results in brake lights failing to illuminate and increased risk of rear end collision.  Defendant General Motors LLC ("GM" or "Defendant")

has known or should have known about this issue for years but has not yet taken any action to remedy it.

2.      Indeed, GM addressed a similar problem in GM Model year 2015-2016 Yukon, Yukon XL, Yukon Denali, and Yukon Denali XL vehicles by issuing a Special Coverage Adjustment ("SCA") whereby GM replaced the inoperative tail lamps at no charge, reimbursed vehicle owners and lessees who paid for repairs, and covered the replacement for 6 years or 72,000 miles.  On information and belief, the Class Vehicles suffer from the same or similar defect.

3.      GM's knowledge of the Tail Lamp Assembly Defect is further confirmed by a myriad of complaints filed on the National Highway Transportation Safety Administration ("NHTSA") website regarding the Class Vehicles and lodged on online forums.  The complaints are replete with concerns that the tail or brake lamps work only intermittently and present a dangerous and unsafe condition.

4.      Further, GM was, or should also be, aware of the Tail Lamp Assembly Defect as the result of GM's bench testing of the Class Vehicles, complaints to government agencies, complaints to GM customer service, complaints to GM dealers, and its own internal analysis.

5.      Apparently, the problem is so widespread that Class members are reporting that replacement parts are on backorder nationwide.

6.      The Tail Lamp Assembly Defect frequently manifests shortly after the limited warranty period has expired and is substantially certain to manifest during the useful life of the Class Vehicles, even though the Tail Lamp Assembly should last for the entire useful life of the

CLASS ACTION COMPLAINT

Class Vehicles without wearing out or failing.  The cost to repair or replace the tail lamp assembly exceeds $800.

7.      To date, GM has refused to take any action to correct this concealed Defect when it manifests in Class Vehicles outside the limited warranty period, despite GM's knowledge of the Defect and its awareness of the safety consequences of its inaction.  Given Defendant's superior knowledge of this concealed, safety-related Defect, unequal bargaining power, and other factors discussed below, any attempt by GM to limit the warranty with respect to the Tail Lamp Assembly Defect is unconscionable here.

8.      To date, GM has concealed and/or intentionally failed to disclose the Defect and refused to properly remedy this significant safety hazard.  Despite its longstanding knowledge of the Defect, GM has routinely refused to repair the Class Vehicles without charge when the Defect manifests and has refused to offer to reimburse its customers, like Plaintiff, who have incurred out-of-pocket expenses to repair the Tail Lamp Assembly Defect.

9.      Not only did GM conceal the material fact that the tail lamp assembly or particular components within the tail lamp assembly are defective and require costly repairs to fix, GM also did not reveal that the existence of the Tail Lamp Assembly Defect would diminish the intrinsic and resale value of the Class Vehicles and lead to the safety concerns described.

10.     Such omissions of fact were material, since had Plaintiff and other Class members known about the Tail Lamp Assembly Defect at the time of their purchase or lease, they would have deemed it important in determining how to act due to the important safety issues involved, and either not bought or leased the Class Vehicles at all or paid less than they did for the Class Vehicles.

11.     GM sold, leased, and continues to sell and lease the Class Vehicles despite its awareness of the Defect.  GM chose and continues to choose financial gain at the expense of consumers by concealing and omitting a disclosure of the Tail Lamp Assembly Defect and potential safety hazard to consumers who purchase or lease Class Vehicles.

12.     As a result of Defendant's unfair and deceptive business practices, owners of Class Vehicles, including Plaintiff, have suffered an injury in fact and an ascertainable loss of money and/or property and have otherwise been harmed by GM's conduct. The unfair and deceptive trade practices committed by Defendant were conducted in a manner giving rise to substantial aggravating circumstances.

13.     GM's conduct violates well established consumer protection laws in Florida and constitutes a continuous breach of its warranties to Plaintiff and consumers in the United States.

## JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 and the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and defendant are citizens of different states. This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

15.     This Court has general and specific jurisdiction over the Defendant because Defendant GM has sufficient minimum contacts with Florida and within the Southern District of Florida to establish Defendant's presence in Florida, and certain material acts upon which this suit is based occurred within the Southern District of Florida. GM does substantial business in

the State of Florida and within this Judicial District, is registered and doing business within the State of Florida, and otherwise maintains requisite minimum contacts with the State of Florida. Specifically, GM distributed Plaintiff's Class Vehicle in Florida, and the vehicle has remained in Florida and been registered in Florida since its original sale at a franchised GM dealership in Florida.

16.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because Defendant is subject to personal jurisdiction within the Southern District of Florida and a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this judicial district, including: Plaintiff experienced the Tail Lamp Assembly Defect in Palm Beach County, and Plaintiff's Tail Lamp Assembly Defect was diagnosed by a GM franchised dealership in Palm Beach County.  Furthermore, Plaintiff's Class Vehicle is located in Palm Beach County, and Plaintiff resides in Palm Beach County. Additionally, GM distributes Class Vehicles in this District and receives substantial compensation and profits from the sale and lease of Class Vehicles in this District and has and continues to conceal and make material omissions in this District.

## THE PARTIES

17.     Plaintiff Rhonda Small is a citizen and resident of Palm Beach County, Florida.

18.     Defendant General Motors LLC is a Delaware limited liability company with its principal place of business located at 300 Renaissance Center, Detroit, Michigan 48243. Defendant designs, manufactures and sells automobiles throughout the United States, including in the State of Florida, under the brand names Chevrolet, GMC, and Cadillac. GM does business in Florida, advertising, distributing, and selling its vehicles through its dealer network and other

outlets in the State.  GM's registered agent in this State is Corporation Service Company, located at 1201 Hays Street, Tallahassee, FL 32301-2525.

## FACTUAL BACKGROUND AND SUBSTANTIVE ALLEGATIONS
## THE TAIL LAMP ASSEMBLY DEFECT

19.     The Class Vehicles are equipped with a tail lamp assembly.  Below is a picture of the tail lamp assembly.



20.     The tail lamp assembly includes tail lights that illuminate when the headlights are turned on to create visibility for drivers behind you during the night or adverse weather conditions.  Just as the headlights make your vehicle visible to others on the opposite side of the road, the tail lights make your vehicle visible to cars behind you.  The assembly also includes brake lights that alert other drivers when you are pressing the brake pedal to slow down.

21.     The tail lamp assembly is a part that should last the entire useful life of the Class Vehicles and not require repair or replacement.

CLASS ACTION COMPLAINT

22.     The tail lamp assembly is a fully sealed unit and was not designed to be repaired. If there is a problem, the lamp is replaced as a complete and very expensive unit.

23.     The tail lamps in the Class Vehicles work inconsistently and intermittently and become inoperable.

24.     On information and belief, the tail lamp assembly in the Class Vehicles may have faulty LED strips that cause the brake or tail lights to fail or may have a faulty connection inside the tail lamp assembly or defective circuit board assembly caused by a weakness in the circuitry of the tail light. The tail lamp assembly failure can be a direct result of the defective design of the alloy base circuit used to maintain continuity.  On information and belief, the alloy's inability to expand and contract due to the current design causes the Tail Lamp Assembly Defect, whereby the alloy breaks, interrupts the current from maintaining continuity, and results in failure when the circuit trace inside the housing cracks.  The tail lamp assembly should have had expansion and contraction points to prevent premature failure.

25.     The Tail Lamp Assembly Defect may also be the result of condensation in the tail lamp assembly. Condensation occurs when the air inside the lamp assembly, through atmospheric changes, reaches the "dew point." When this takes place, the moisture in the air within the tail lamp assembly condenses, creating a fine mist or white fog on the inside surface of the lamp lens. LED tail lamp assemblies are composed of complicated circuit boards that power the LEDs and are even designed not to be repaired and come in sealed-type units. Moisture may enter worn housings and could corrode circuit boards, causing the resistors to fail and the LED to burn out.  GM acknowledged the condensation problem in a Technical Services Bulletin dated December 2018 that applied to all 2019 and Prior GM Passenger Cars and Trucks.

CLASS ACTION COMPLAINT

Completely sealed tail lamp assemblies, such as those in the Class Vehicles, require the replacement of the complete lamp assembly if a bulb filament burns out.

26.     The Tail Lamp Assembly Defect is an obvious safety hazard.  Failure of the tail lamp assembly results in rear lights failing to illuminate and an increased risk of rear end collision.

<u>**GM'S KNOWLEDGE OF THE TAIL LAMP ASSEMBLY DEFECT**</u>

27.     GM's notice of the Tail Lamp Assembly Defect derived from, among other things, GM's own knowledge about the material, design, and manufacture of the part; feedback, both directly and through its dealers, from its customers during repairs; complaints in NHTSA database beginning as early as November 2019; online complaints in web forums and social media that are monitored by GM; and news reports.

28.     GM also monitors its customers' complaints made to the National Highway Traffic Safety Administration ("NHTSA.") Federal law requires automakers like GM to be in close contact with NHTSA regarding potential auto defects, including imposing a legal requirement (backed by criminal penalties) compelling the confidential disclosure of defects and related data by automakers to NHTSA, including field reports, customer complaints, and warranty data. *See* TREAD Act, Pub. L. No. 106-414, 114 Stat.1800 (2000).

29.     Automakers have a legal obligation to identify and report emerging safety-related defects to NHTSA under the Early Warning Report requirements. Similarly, automakers monitor NHTSA databases for consumer complaints regarding their automobiles as part of their ongoing obligation to identify potential defects in their vehicles, including safety-related defects. *Id*. Thus, GM knew or should have known of the many complaints about the Tail Lamp Assembly

Defect logged by NHTSA ODI, and the content, consistency, and large number of those complaints alerted, or should have alerted, GM to the Defect.

30.     GM, through its dealerships, agents, servants, and employees, was put on actual and/or constructive notice of the Tail Lamp Assembly Defect from GM's internal customer assistance inquiry records and National Highway and Traffic Safety Administration Office of Defects Investigation (NHTSA-ODI) reports.  The NHTSA-ODI website allows consumers to identify and report problems with vehicle, tires, equipment or car seats.

31.     On information and belief, the Office of Defects Investigation reviews and analyzes complaints to determine whether to issue recalls. The Vehicle Safety Complaint filing form specifically includes required fields for the name, telephone number, and email address for the complainant, in addition to the VIN number for the vehicle (which are apparently tested by an online database).  NHTSA-ODI does not share complainants' personal information with the general public, and a complaint is added to a public NHTSA database only after it removes all information from complaint fields that personally identify a complainant.

32.     NHTSA-ODI specifically states on its website that: "Government analysts review each complaint in a timely fashion. If warranted, the Office of Defects Investigation (ODI) will open an investigation to determine if a safety defect trend exists. Some of these investigations result in safety recalls. While you may or may not be contacted by a NHTSA-ODI investigator to clarify the information submitted, all reports are reviewed and analyzed for potential defects trends." Thus, NHTSA-ODI complaints are made by individuals who must identify themselves and enter detailed contact information and an accurate VIN number, and these complaints are reviewed and analyzed by the federal government.

33.     NHTSA-ODI reports dozens of complaints consistent with the symptoms of the Tail Lamp Assembly Defect in Class Vehicles. These consumer complaints filed with the NHTSA are delivered to GM, reviewed by GM, and analyzed by GM's engineers. GM received and was aware of these consumer complaints.  Many of the complaints reveal that GM, through its network of dealers and repair technicians, was made aware of the issues described herein with respect to the tail lamps. In addition, the complaints indicate that despite having knowledge of the Defect and the exact vehicles affected, GM blamed its customers and refused to honor its 3-year, 36,000-mile bumper-to bumper warranty.  True and accurate copies of a sampling of these complaints for the 2017 and 2018 GMC Yukon and 2017 GMC Yukon Denali vehicles are set forth in the paragraphs below:

May 18, 2021 **NHTSA ID NUMBER: 11417560**
**Components: ELECTRICAL SYSTEM, EXTERIOR LIGHTING**
**NHTSA ID Number:** 11417560

**Incident Date** September 1, 2020

**Consumer Location** KATY, TX

**Vehicle Identification Number** 1GKS1CKJ5JR****

**Summary of Complaint**

**CRASHNo**

**FIRENo**

**INJURIES0**

**DEATHS0**

Side rear brake lights work intermittently, often cutting out and losing all power while driving.

**1 Affected Product**

CLASS ACTION COMPLAINT

**1 Affected Product**

April 12, 2021 **NHTSA ID NUMBER: 11407820**
**Components: EXTERIOR LIGHTING**
**NHTSA ID Number:** 11407820

**Incident Date** April 12, 2021

**Consumer Location** BIRMINGHAM, AL

**Vehicle Identification Number** 1GKS2BKC3HR****

**Summary of Complaint**

**CRASH No**

**FIRE No**

**INJURIES0**

**DEATHS0**

LEFT AND RIGHT BRAKING LIGHTS SOME TIME DO NOT WORK WHEN BRAKING. ONLY THE REVERSE LIGHT WILL WORK WHILE THE BRAKING LIGHT WILL NOT. TO ADD, WHEN THE FRONT HEADLIGHTS ARE ON, SOME TIMES THE LEFT AND RIGHT TAIL LIGHTS (LIGHT THAT IS ON WHEN NOT BRAKING) AND BRAKING LIGHTS WILL NOT WORK. I HAVE HAD TWO DIFFERENT PEOPLE PULL UP NEXT TO ME SAYING MY BRAKE LIGHTS ARE OUT IN THE LAST TWO WEEKS. HOWEVER, I HAVE OBSERVED WHEN THEY ARE WORKING IN THAT SAME TIME SPAN. THE LAST TWO DAYS, ONLY THE RIGHT TAIL/BRAKING LIGHT IS NOT WORK.

**1 Affected Product**

April 6, 2021 **NHTSA ID NUMBER: 11406682**
**Components: EXTERIOR LIGHTING, SERVICE BRAKES**
**NHTSA ID Number:** 11406682

**Incident Date** April 5, 2021

**Consumer Location** ABINGDON, MD

**Vehicle Identification Number** 1GKS2BKC2HR****

**Summary of Complaint**

CLASS ACTION COMPLAINT

**CRASH No**

**FIREN No**

**INJURIES0**

**DEATHS0**

DRIVER SIDE REAR BRAKE LIGHT ISN'T WORKING ANYMORE. 46K MILES ON A 2017 GMC YUKON.

**1 Affected Product**

April 5, 2021 **NHTSA ID NUMBER: 11406549**
**Components: ELECTRICAL SYSTEM, SERVICE BRAKES**
**NHTSA ID Number:** 11406549

**Incident Date** April 3, 2021

**Consumer Location** LAKELAND, FL

**Vehicle Identification Number** 1GKS2BKC4HR****

**Summary of Complaint**

**CRASH No**

**FIRE No**

**INJURIES0**

**DEATHS0**

BRAKE LIGHT FAILURE. BRAKE LIGHTS WORK INCONSISTENTLY. CHANGING THE BULB DOES NOT FIX THE PROBLEM. THIS IS AN ELECTRICAL ISSUE THAT HAS BEEN REPORTED BY NUMEROUS OWNERS. THIS IS A SAFETY HAZARD AS THE COMPONENTS HAVE TO BE REPAIRED BY A TECHNICIAN WHICH CAUSES HUNDREDS OF DOLLARS, PER LIGHT. THIS IS A DEFECTIVE PRODUCT THAT SHOULD BE RECALLED!!!

**1 Affected Product**

May 25, 2021 **NHTSA ID NUMBER: 11418480**
**Components: EXTERIOR LIGHTING**
**NHTSA ID Number:** 11418480

**Incident Date** September 16, 2020

**Consumer Location** MIDLOTHIAN, VA

**Vehicle Identification Number** 1GKS2HKJ9HR****

**Summary of Complaint**

**CRASH No**

**FIRE No**

**INJURIES0**

**DEATHS0**

Passenger side brake light goes in and out and often time stays out. I have read about numerous other people dealing with same issue as it is a manufacturing/quality issue. This is very dangerous. GMG apparently puts the same faulty brake parts back in car while under warranty then when the issue arises again when not in warranty sell customers a pricey part that actually works. Again, very unsafe and terrible business practice as well.

**1 Affected Product**

March 18, 2021 **NHTSA ID NUMBER: 11403644**
**Components: EXTERIOR LIGHTING, SERVICE BRAKES**
**NHTSA ID Number:** 11403644

**Incident Date** March 13, 2021

**Consumer Location** DURHAM, NC

**Vehicle Identification Number** 1GKS2GKCXHR****

**Summary of Complaint**

**CRASH No**

**FIRE No**

**INJURIES0**

**DEATHS0**

BRAKE LIGHTS WORK INTERMITTENTLY. VERY DANGEROUS! PASSENGER SIDE BRAKE LIGHT, STOPPED WORKING COMPLETELY, THEN CAME BACK ON.

**1 Affected Product**

Page 13

March 17, 2021 **NHTSA ID NUMBER: 11403521**
**Components: EXTERIOR LIGHTING**
**NHTSA ID Number:** 11403521

**Incident Date** March 16, 2021

**Consumer Location** EMORY, TX

**Vehicle Identification Number** 1GKS1BKCXHR****

**Summary of Complaint**

**CRASH No**

**FIRE No**

**INJURIES0**

**DEATHS0**

THE BRAKE LIGHT IS OUT AND A SINGLE TAIL LIGHT IS OVER 500$

**1 Affected Product**

March 3, 2021 **NHTSA ID NUMBER: 11399022**
**Components: EXTERIOR LIGHTING**
**NHTSA ID Number:** 11399022

**Incident Date** March 3, 2021

**Consumer Location** SEATTLE, WA

**Vehicle Identification Number** 1GKS2GKCXHR****

**Summary of Complaint**

**CRASH No**

**FIRE No**

**INJURIES0**

**DEATHS0**

INTERMITTENT FAILURE OF ONE BRAKE LIGHT WHILE MOVING. VEHICLE HAS
ONLY 38000 MILES. THIS APPEARS TO BE A COMMON COMPLAINT (JUDGING BY
CAR FORUMS). I UNDERSTAND GMC MAKES AN IMPROVED VERSION OF THIS
ASSEMBLY. GIVEN THE POTENTIAL SAFETY ISSUE, THIS SHOULD BE A RECALL.

**1 Affected Product**

March 1, 2021 **NHTSA ID NUMBER: 11398520**
**Components: EXTERIOR LIGHTING, SERVICE BRAKES**
**NHTSA ID Number:** 11398520

**Incident Date** March 1, 2021

**Consumer Location** FAIRFAX, VA

**Vehicle Identification Number** 1GKS2CKJ1HR****

**Summary of Complaint**

**CRASH No**

**FIRE No**

**INJURIES0**

**DEATHS0**

BOTH BRAKE LIGHTS STOPPED WORKING AT THE SAME TIME. THERE IS NO FUSE. ONLINE REPORTS SHOW MANY PEOPLE WITH THE SAME VERY DANGEROUS, HUGE SAFETY ISSUE OF THEIR BRAKE LIGHTS FAILING. THE CAR 3 YEARS 2 MONTHS OLD.

**1 Affected Product**

February 24, 2021 **NHTSA ID NUMBER: 11397777**
**Components: EXTERIOR LIGHTING**
**NHTSA ID Number:** 11397777

**Incident Date** February 24, 2021

**Consumer Location** APEX, NC

**Vehicle Identification Number** 1GKS2HKJ0HR****

**Summary of Complaint**

**CRASH No**

**FIRE No**

**INJURIES0**

CLASS ACTION COMPLAINT

**DEATHS0**

PASSENGER BRAKE LIGHT IS INTERMITTENT. CLEARLY ISSUE WITH THE INTERNAL ASSEMBLY.

**1 Affected Product**

July 21, 2020 **NHTSA ID NUMBER: 11340728**
**Components: ELECTRICAL SYSTEM, EXTERIOR LIGHTING**
**NHTSA ID Number:** 11340728

**Incident Date** June 29, 2020

**Consumer Location** STUART, FL

**Vehicle Identification Number** 1GKS1GKC4HR****

**Summary of Complaint**

**CRASH No**

**FIRE No**

**INJURIES0**

**DEATHS0**

RIGHT READ TAIL LIGHT, BRAKE LIGHT AND REVERSE LIGHT STOPPED WORKING AT 61,135 MILES ON ODOMETER READING FOR NO APPARENT REASON.

**1 Affected Product**

June 10, 2020 **NHTSA ID NUMBER: 11328181**
**Components: EXTERIOR LIGHTING, STRUCTURE**
**NHTSA ID Number:** 11328181

**Incident Date** June 5, 2020

**Consumer Location** RANCHO MISSION VIEJO, CA

**Vehicle Identification Number** 1GKS1BKCXHR****

**Summary of Complaint**

**CRASH No**

**FIRE No**

**INJURIES0**

**DEATHS0**

IN THE LAST YEAR, BOTH OF THE REAR TAIL LIGHTS HAVE FAILED IN MY 2017 GMC YUKON. TO HAVE THE DEALERSHIP REPLACE THE TAIL LIGHTS IT COST +$750 PER TAIL LIGHT FOR A CAR THAT IS ONLY 3 YEARS OLD. I WORK WITH LED LIGHTING AND ON AVERAGE, LED LIGHTS SHOULD LAST FOR 5000 HOURS OF USE. THERE IS NO WAY THAT IN THE LAST 3 YEARS WE HAVE UTILIZED 5000 HOURS OF DRIVE TIME TO WARRANT THAT THESE LED'S SHOULD BE BURNING OUT. I BELIEVE THAT THE LED'S THAT THEY ARE USING ARE DEFECTIVE AND A CASE NEEDS TO BE MADE TO SEE IF GMC IS HAVING ISSUES WITH THE REAR TAIL LIGHT LED'S, THE PARTS ARE WAY TOO EXPENSIVE TO BE FAILING AFTER A FEW YEARS OF INTERMITTENT USE. *TR

**1 Affected Product**


May 22, 2020 **NHTSA ID NUMBER: 11325527**
**Components: EXTERIOR LIGHTING**
**NHTSA ID Number:** 11325527

**Incident Date** May 21, 2020

**Consumer Location** GLASSBORO, NJ

**Vehicle Identification Number** 1GKS2AKC7HR****

**Summary of Complaint**

**CRASH No**

**FIRE No**

**INJURIES0**

**DEATHS0**

INTERMITTENTLY DEFECTIVE TAIL / BRAKE LIGHT. LED CIRCUIT BREAKS. KNOWN ISSUE. DEALER WANTS $800 TO FIX.. *TR

**1 Affected Product**


April 24, 2020 **NHTSA ID NUMBER: 11322135**
**Components: EXTERIOR LIGHTING**
**NHTSA ID Number:** 11322135

CLASS ACTION COMPLAINT

**Incident Date** February 3, 2020

**Consumer Location** OCEAN SPRINGS, MS

**Vehicle Identification Number** 1GKS2BKCXHR****

**Summary of Complaint**

**CRASH No**

**FIRE No**

**INJURIES0**

**DEATHS0**

TL* THE CONTACT OWNS A 2017 GMC YUKON. THE CONTACT STATED THAT THE DRIVER'S SIDE REAR TAIL LAMPS WERE INOPERABLE. THE VEHICLE WAS TAKEN TO MANDAL BUICK GMC (11290 MANDAL PKWY, D'IBERVILLE, MS 39540). THE CONTACT WAS INFORMED THAT THE VEHICLE WAS NOT INCLUDED IN A RECALL AND ADDITIONALLY, THE VEHICLE WARRANTY WAS EXPIRED. THE DEALER QUOTED A COST OF $760 TO HAVE THE VEHICLE REPAIRED. THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS NOT INFORMED OF THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 58,000.

**1 Affected Product**


April 20, 2020 **NHTSA ID NUMBER: 11321703**
**Components: EXTERIOR LIGHTING**
NHTSA ID Number: 11321703

**Incident Date** April 15, 2020

**Consumer Location** GRAND BLANC, MI

**Vehicle Identification Number** 1GKS2AKC9HR****

**Summary of Complaint**

**CRASH No**

**FIRE No**

**INJURIES0**

**DEATHS0**

WITHOUT WARNING, RIGHT REAR TAILLIGHT STOPS WORKING. THIS IS FOR OPERATING AND STOPPING. APPARENTLY, THERE ARE MANY COMPLAINTS OF THIS...SEVERE SAFETY HAZARD FOR A KNOWN PART WITH PROBLEMS.

**1 Affected Product**

**January 31, 2020 NHTSA ID NUMBER: 11306231
Components: EXTERIOR LIGHTING**
**NHTSA ID Number:** 11306231

**Incident Date** January 29, 2020

**Consumer Location** DAMASCUS, MD

**Vehicle Identification Number** 1GKS2GKCXHR****

**Summary of Complaint**

**CRASH No**

**FIRE No**

**INJURIES0**

**DEATHS0**

TAILLIGHT FAILURE: THE FAILURE OF LED LIGHT IS A DIRECT RESULT OF THE ALLOY BASE CIRCUIT USED TO MAINTAIN CONTINUITY. THE ALLOY'S INABILITY TO EXPAND AND CONTRACT DUE TO THE CURRENT DESIGN, CAUSES FAILURE OF THE PRODUCT. EVIDENT BY THE VIDEOS OF REPAIRS ONLINE. THE ALLOY IS BREAKING, INTERRUPTING THE CURRENT FROM MAINTAINING CONTINUITY RESULTING IN FAILURE. THIS IS A MANUFACTURING DEFECT WHERE THE PRODUCT SHOULD HAVE HAD EXPANSION AND CONTRACTION POINTS ON SUCH A PART TO PREVENT PREMATURE FAILURE. THE LIGHT IS NONREPAIRABLE WITHOUT BREACHING THE PERMANENTLY SEALED SHELL.

**1 Affected Product**

**January 25, 2020 NHTSA ID NUMBER: 11301811
Components: ELECTRICAL SYSTEM, EXTERIOR LIGHTING**
**NHTSA ID Number:** 11301811

**Incident Date** January 4, 2020

**Consumer Location** SACRAMENTO, CA

**Vehicle Identification Number** 1GKS2GKC9HR****

**Summary of Complaint**

**CRASH** No

**FIRE** No

**INJURIES** 0

**DEATHS** 0

REAR PASSENGERS BRAKE LIGHT FLICKERS OFF AND ON CAUSING A SAFETY RISK WHILE DRIVING. PREVIOUS YEARS OF SAME MAKE AND MODEL ARE HAVING SAME ISSUES CAUSING A SHORTAGE IN $400-800 REPLACEMENT OF TAIL LIGHT ASSEMBLY. RATHER, GMC SHOULD RECALL AND CORRECT THE ORIGINAL MANUFACTURING QUALITY TO BEGIN WITH.

**1 Affected Product**

January 16, 2020 **NHTSA ID NUMBER: 11299745**
**Components: EXTERIOR LIGHTING**
**NHTSA ID Number:** 11299745

**Incident Date** October 15, 2019

**Consumer Location** DANVILLE, CA

**Vehicle Identification Number** 1GKS2HKJ1HR****

**Summary of Complaint**

**CRASH** No

**FIRE** No

**INJURIES** 0

**DEATHS** 0

BACK PASSENGER SIDE BRAKE LIGHTING WENT OUT. ORIGINALLY IT WOULD WORK SOMETIMES AND NOT WORK OTHERS. NOT IT NEVER WORKS... DEALER SAID EARLIER YEARS WERE COVERED BY RECALL BUT NOT 2017. VERY EXPENSIVE TO REPLACE AND IVE HAD THE CAR 2 YEARS. CRAZY.

**1 Affected Product**

December 19, 2019 **NHTSA ID NUMBER: 11290058**
**Components: EXTERIOR LIGHTING**
**NHTSA ID Number:** 11290058

CLASS ACTION COMPLAINT

**Incident Date** November 22, 2019

**Consumer Location** ACWORTH, GA

**Vehicle Identification Number** 1GKS2HKJ1HR****

**Summary of Complaint**

**CRASH No**

**FIRE No**

**INJURIES0**

**DEATHS0**

REAR PASSENGER LED BRAKE LIGHT FAILURE. DEALER SAID THIS IS A KNOWN
FAILURE ITEM SO MUCH SO THAT PARTS ARE ON BACKORDER NATION WIDE.

November 19, 2019 **NHTSA ID NUMBER: 11281052**
**Components: EXTERIOR LIGHTING**
**NHTSA ID Number:** 11281052

**Incident Date** November 16, 2019

**Consumer Location** BATTLE MOUNTAIN, NV

**Vehicle Identification Number** 1GKS2BKC5HR****

**Summary of Complaint**

**CRASH No**

**FIRE No**

**INJURIES0**

**DEATHS0**

PASSENGER SIDE BRAKE AND TAIL LIGHT QUIT WORKING TOOK TO DEALERSHIP
FOR REPAIR. DEALERSHIP SAID THEY HAD FIXED IT AND HAD NOT. TOOK BACK
TO THEM AND THEY SAY THEY CAN'T GET ONE IT'S ON BACK ORDER. AFTER
LOOKING INTO IT MYSELF IT SEEMS TO BE A VERY COMMON PROBLEM THAT GM
ISN'T DOING ANYTHING TO FIX BUT PUT THE SAME LIGHTS BACK IN THAT WILL
FAIL AGAIN. I'VE ASKED ABOUT AN UPDATED LIGHT THAT WOULDN'T FAIL
AGAIN AND THE DEALERSHIP SEEMS TO HAVE NO KNOWLEDGE ABOUT THE
LIGHTS AT ALL. GM NEEDS TO STEP UP AND FIX THE THIS ISSUE AS IT IS A
SAFETY PROBLEM.

**1 Affected Product**

October 19, 2019 **NHTSA ID NUMBER: 11269557**
**Components: EXTERIOR LIGHTING**
**NHTSA ID Number:** 11269557

**Incident Date** October 18, 2019

**Consumer Location** VENTURA, CA

**Vehicle Identification Number** 1GKS2BKC2HR****

**Summary of Complaint**

**CRASH No**

**FIRE No**

**INJURIES0**

**DEATHS0**

DRIVERS SIDE LED BRAKE LIGHT DOES NOT FUNCTION. VEHICLE HAS 52,000 MILES. KNOWN DEFECT YET GMC DOES NOT OFFER REPAIR. REQUIRES $800 LIGHT ASSEMBLY REPLACEMENT.

**1 Affected Product**

October 7, 2019 **NHTSA ID NUMBER: 11266685**
**Components: EXTERIOR LIGHTING**
**NHTSA ID Number:** 11266685

**Incident Date** October 2, 2019

**Consumer Location** FULLERTON, CA

**Vehicle Identification Number** 1GKS1BKC2HR****

**Summary of Complaint**

**CRASH Yes**

**FIRE No**

**INJURIES0**

**DEATHS0**

CLASS ACTION COMPLAINT

THE GMC YUKON MODELS IN ALL TRIMS, HAVE FAULTY LED STRIPS THAT CAUSE THE BRAKE LIGHTS TO FAIL ON THE LEFT, AND RIGHT BRAKE LIGHT ASSEMBLY. THE FRUSTRATING PART IS IT WORKS INTERMITTENTLY, AND WHEN IT'S OFF A SLIGHT TAP WILL MOMENTARILY BRING IT BACK ON FOR THE DURATION OF THE JOLT. THIS LEADS ME TO BELIEVE THAT IT'S FAULTY CONNECTION INSIDE THE SEALS BRAKE LIGHT ASSEMBLY. THERE ARE THOUSANDS OF COMPLAINTS ONLINE ON OWNER FORUMS OF GMC YUKON'S . THIS IS KNOWN AS THE NEW YEAR MODELS 18-19 ARE NOT HAVING THE SAME ISSUE.

**1 Affected Product**

**October 24, 2019 NHTSA ID NUMBER: 11270660**
**Components: EXTERIOR LIGHTING**
**NHTSA ID Number:** 11270660

**Incident Date** September 24, 2019

**Consumer Location** EL CAJON, CA

**Vehicle Identification Number** 1GKS2GKC9HR****

**Summary of Complaint**

**CRASH No**

**FIRE No**

**INJURIES0**

**DEATHS0**

TL* THE CONTACT OWNS A 2017 GMC YUKON XL. THE CONTACT STATED THAT THE BRAKE LIGHTS FAILED TO ILLUMINATE INTERMITTENTLY. THE CONTACT TOOK THE VEHICLE TO MARVIN K BROWN AUTO CENTER (LOCATED AT 1441 CAMINO DEL RIO S, SAN DIEGO, CA, 619-272-6867) WHERE IT WAS DIAGNOSED THAT THE BRAKE LIGHTS NEEDED TO BE REPLACED. HOWEVER, DUE TO THE COMMONALITY OF THE FAILURE, THE PARTS WERE ON BACKORDER. THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS NOT NOTIFIED. THE APPROXIMATE FAILURE MILEAGE WAS 64,000.

**1 Affected Product**

**October 22, 2019 NHTSA ID NUMBER: 11270105**
**Components: EXTERIOR LIGHTING**
**NHTSA ID Number:** 11270105

**Incident Date** October 21, 2019

**Consumer Location** WEST VALLEY CITY, UT

**Vehicle Identification Number** 1GKS2GKC2HR****

**Summary of Complaint**

**CRASH No**

**FIRE No**

**INJURIES0**

**DEATHS0**

RIGHT REAR TAILLIGHTS STOPPED WORKING. UNIT IS SEALED AND WHOLE ASSEMBLY MUST BE REPLACED, AT GREAT EXPENSE. THIS APPEARS TO BE A COMMON PROBLEM BUT GM WILL NOT FIX.

**1 Affected Product**

October 15, 2019 **NHTSA ID NUMBER: 11268758**
**Components: EXTERIOR LIGHTING**
NHTSA ID Number: 11268758

**Incident Date** October 8, 2019

**Consumer Location** MIDLAND, TX

**Vehicle Identification Number** 1GKS2HKJ3HR****

**Summary of Complaint**

**CRASH No**

**FIRE No**

**INJURIES0**

**DEATHS0**

TL* THE CONTACT OWNS A 2017 GMC YUKON XL. WHILE DRIVING VARIOUS SPEEDS, THE CONTACT NOTICED THAT THE REAR BRAKE LIGHTS STOPPED WORKING WITHOUT WARNING. THE VEHICLE WAS TAKEN TO MIDLAND BUICK GMC (3205 W WALL ST, MIDLAND, TX 79701, (432) 897-0665) WHERE IT WAS DIAGNOSED THAT THE LED BRAKE SYSTEM NEEDED TO BE REPLACED. THE VEHICLE WAS NOT REPAIRED AND THE FAILURE RECURRED MULTIPLE TIMES. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE AND INFORMED THE

CONTACT THAT THE VIN WAS NOT INCLUDED IN A RECALL. THE CONTACT WAS ADVISED TO CALL NHTSA TO FILE A COMPLAINT. THE FAILURE MILEAGE WAS APPROXIMATELY 49,000.

**1 Affected Product**

**September 24, 2019 NHTSA ID NUMBER: 11257603**
**Components: EXTERIOR LIGHTING**
**NHTSA ID Number:** 11257603

**Incident Date** September 23, 2019

**Consumer Location** PELHAM, GA

**Vehicle Identification Number** 1GKS1GKC1HR****

**Summary of Complaint**

**CRASH No**

**FIRE No**

**INJURIES 0**

**DEATHS 0**

RIGHT TAIL/BRAKE LIGHT HAS INTERMEDIATE PROBLEM. ADVISED DEALERSHIP, THEY HIT THE LIGHT WITH HAND AND IT FLASHED. GMC IS AWARE THAT THIS IS A PROBLEM. NO DETECTION FROM ANY OF THE SENSORS ADVISING THERE IS A PROBLEM WITH THE TAIL/BRAKE LIGHT. THIS IS OBVIOUSLY AN ISSUE WITH GMC YUKONS WHEREIN THERE IS A BROKEN WIRE IN THE LIGHT ITSELF AND IT IS A FULL UNIT THAT COST APPROXIMATELY $650.00. PRINCE DEALERSHIP DID NOT EVEN ADVISE THAT THERE IS A RECALL ON MY VEHICLE AT THE TIME OF CHECKING THE TAIL/BRAKE LIGHT WAS WARRANTED.

**1 Affected Product**

**September 21, 2019 NHTSA ID NUMBER: 11257113**
**Components: EXTERIOR LIGHTING**
**NHTSA ID Number:** 11257113

**Incident Date** September 20, 2019

**Consumer Location** LINCOLN, NE

**Vehicle Identification Number** 1GKS2BKC0HR****

**Summary of Complaint**

**CRASH** No

**FIRE** No

**INJURIES** 0

**DEATHS** 0

DRIVERS SIDE LED BRAKE LIGHT STRIP INOP. DEALER SAYS ITS 650 PER SIDE PLUS LABOR TO REPLACE. GMC IS AWARE OF ISSUE BUT WILL NOT STAND BEHIND THERE PRODUCT. THEY ALSO LIE AND SAY IT'S THE FIRST THEY HAVE HEARD OF THIS TYPE OF FAILURE. THIS IS A SAFETY CONCERN AND CUSTOMER IS LIABLE FOR A TICKET THAT MAY RESULT FROM FAULTY GM PARTS.

**1 Affected Product**

August 3, 2019 **NHTSA ID NUMBER: 11241558**
**Components: EXTERIOR LIGHTING**
NHTSA ID Number: 11241558

**Incident Date** July 5, 2019

**Consumer Location** BARKSDALE, TX

**Vehicle Identification Number** 1GKS1CKJ9HR****

**Summary of Complaint**

**CRASH** No

**FIRE** No

**INJURIES** 0

**DEATHS** 0

REAR PASSENGER TAIL LIGHT FAILURE. TAIL LIGHT FAILS PREMATURELY WITHOUT ANY MEANS TO WARN DRIVER SHORT OF DIRECT OBSERVATION. PROBLEM KNOWN TO GMC GIVEN HIGH NUMBER OF FAILURES AND COMPLAINTS OF PREMATURE FAILURES. TAIL LIGHT IS EXPENSIVE TO REPLACE.

**1 Affected Product**

July 12, 2019 **NHTSA ID NUMBER: 11231326**
**Components: EXTERIOR LIGHTING**
NHTSA ID Number: 11231326

CLASS ACTION COMPLAINT

**Incident Date** July 2, 2019

**Consumer Location** LEHI, UT

**Vehicle Identification Number** 1GKS2GKC3HR****

**Summary of Complaint**

**CRASH No**

**FIRE No**

**INJURIES0**

**DEATHS0**

THE LED REAR BRAKE LIGHTS ARE CONSISTENTLY FAILING ON THOUSANDS OF THESE VEHICLES. DEALER TOLD ME THEY ARE ON BACK ORDER AND ARE UNAVAILABLE AS THEY CAN'T KEEP UP WITH DEMAND. WITHOUT A FIX, HOW CAN I SAFELY DRIVE THE CAR? I HAVE ONE OUT, IF THE OTHER GOES OUT, WHAT IS THE SOLUTION?

**1 Affected Product**

July 1, 2019 **NHTSA ID NUMBER: 11228653**
**Components: EXTERIOR LIGHTING**
**NHTSA ID Number:** 11228653

**Incident Date** April 5, 2019

**Consumer Location** CONIFER, CO

**Vehicle Identification Number** 1GKS2BKC2HR****

**Summary of Complaint**

**CRASH No**

**FIRE No**

**INJURIES0**

**DEATHS0**

TAIL LIGHTS INTERMITTENTLY WORK. DEALER CLAIMS FULL TAIL LIGHT ASSEMBLY REQUIRED TO FIX (AT ~$850) AND NOT COVERED BY ANY WARRANTY. HUNDREDS OF COMPLAINTS ONLINE OF SIMILAR PROBLEM. SAFETY CONCERN BECAUSE PROBLEM IS INTERMITTENT. INDEPENDENT REPAIR SHOPS POST FIXES TO SOLUTION BY MELTING PLASTIC HOUSING AND

CLASS ACTION COMPLAINT

CONNECTING METAL PIECES ON CIRCUIT BOARD ASSEMBLY THAT BREAK (THIS IS JUST A THIN METAL PLATE THAT WAS POORLY DESIGNED AND CRACKS AT A SIMILAR POINT FREQUENTLY. I THINK THIS IS A FAULTY DESIGN THAT EXPOSES MANY CUSTOMER ERA TO GREAT RISK AND SHOULD BE COVERED BY GMC. PLEASE LOOK INTO IT. CAR IS IN MOTION, STATIONARY OR TURNING WHEN HAPPENS. BRAKE LIGHTS ARE LIGHT THAT IS IMPACTED.

**1 Affected Product**

June 8, 2019 **NHTSA ID NUMBER: 11218694**
**Components: EXTERIOR LIGHTING**
**NHTSA ID Number:** 11218694

**Incident Date** June 5, 2019

**Consumer Location** SAN BERNARDINO, CA

**Vehicle Identification Number** 1GKS2BKC0HR****

**Summary of Complaint**

**CRASH** No

**FIRE** No

**INJURIES** 0

**DEATHS** 0

THE REAR PASSENGER LIGHT ASSEMBLY HAS FAILED. NO LIGHTS WITHIN THE HOUSING ARE CURRENTLY WORKING. THE UNSAFE CONDITION EXISTS WHEN THE VEHICLE IS IN MOTION, AS IT HAS NO RUNNING LIGHTS, BRAKE LIGHTS OR TURN SIGNALS. THIS APPEARS TO BE A VERY COMMON PROBLEM FOR YUKON'S OF THIS YEAR, WHICH ARE STILL FAIRLY NEW.

**1 Affected Product**

May 14, 2019 **NHTSA ID NUMBER: 11207537**
**Components: EXTERIOR LIGHTING**
**NHTSA ID Number:** 11207537

**Incident Date** May 14, 2019

**Consumer Location** PAULDEN, AZ

**Vehicle Identification Number** 1GKS2BKC0HR****

CLASS ACTION COMPLAINT

**Summary of Complaint**

**CRASH No**

**FIRE No**

**INJURIES0**

**DEATHS0**

DRIVING FROM PRESCOTT, AZ TO PHOENIX, AZ WITH MY HUSBAND AND 3 YEAR OLD SON. WE WERE HEADING EAST ON SR-69 WHEN WE WERE PULLED OVER. WE WERE INFORMED THAT OUR PASSENGER SIDE BRAKE LIGHT WAS NON-OPERATIONAL. AFTER INSPECTION IT WAS FOUND THAT TURN SIGNAL AND HAZARD LIGHTS WORKED BUT NOT BREAK. A REPAIR ORDER WAS ISSUED. WE TOOK IT TO THE GMC DEALERSHIP AND WAS TOLD THE WHOLE TAIL/BRAKE LIGHT HOUSING, WIRE, AND POTENTIALLY THE FUSE NEEDED REPLACED AND THAT IT WOULD COST $700. WE WERE ALSO TOLD BY THE DEALERSHIP THAT A THEY HAVE HAD SEVERAL GMC YUKON OWNERS COME IN WITH THE SAME ISSUE AND THAT IT WAS A PART MALFUNCTION THAT MAY OR MAY NOT BE COVERED BY OUT WARRANTY.

**1 Affected Product**

April 15, 2019 **NHTSA ID NUMBER: 11196408**
**Components: EXTERIOR LIGHTING**
**NHTSA ID Number:** 11196408

**Incident Date** May 29, 2017

**Consumer Location** TURLOCK, CA

**Vehicle Identification Number** IGKS2HKJ1HR****

**Summary of Complaint**

**CRASH No**

**FIRE No**

**INJURIES0**

**DEATHS0**

HAD THIS VEHICLE FOR NINETEEN MONTHS, 50,000 MILES, BROUGHT NEW, RIGHT BRAKE WORKS INTERMITTENTLY OR NOT AT ALL. THESE LIGHTS ARE COMPLETELY SEALED AND LIGHTS ARE NOT REPLACEABLE, EXCEPT REVERSE BULB. GONE OVER 30,000 MILES SO WARRANTEE NOT COVERED. DEALERSHIP

CLASS ACTION COMPLAINT

WANTS RIDICULOUS PRICE FOR REPLACEMENT. WHY WOULD YOU DO THIS? LIGHTS NEED TO BE CHANGED SOONER OR LATER? ISN'T IT EASIER TO CHANGE A BULB RATHER THEN AN ENTIRE EXPENSIVE UNIT?

**1 Affected Product**

April 9, 2019 **NHTSA ID NUMBER: 11194996**
**Components: ELECTRICAL SYSTEM, EXTERIOR LIGHTING, SERVICE BRAKES**
**NHTSA ID Number:** 11194996

**Incident Date** October 1, 2018

**Consumer Location** SALT LAKE CITY, UT

**Vehicle Identification Number** 1GKS2GKC0HR****

**Summary of Complaint**

**CRASH No**

**FIRE No**

**INJURIES0**

**DEATHS0**

THE WHOLE BACK TAIL LIGHT HAD TO BE REPLACED AFTER FAILING. POOR DESIGN AND A COMMON PROBLEM ON THE 2015-2017 GMC YUKONS. THERE IS A COMMON AREA THAT BREAKS. NOT ONLY A BIG EXPENSE BUT ALSO A LARGE WASTE OF MATERIAL CONSIDERING THE WHOLE UNIT HAS TO BE REPLACED. COST IS OVER $800.00 AND THE DEALER BUYS BACK THE OLD LIGHT FOR $50 SEEMS A BIT SUSPICIOUS BY GMC. THESE LAMPS ARE A SEALED UNIT AND WERE NEVER DESIGNED TO BE REPAIRED. AS DESIGNED, IF THERE IS A PROBLEM, THE LAMP IS REPLACED AS A COMPLETE AND VERY EXPENSIVE UNIT. MORE CAN BE FOUND HERE: HTTPS://WWW.CARCOMPLAINTS.COM/GMC/YUKON/2015/LIGHTS/TAILLIGHT_NOT_WORKING_PROPERLY.SHTML

**1 Affected Product**

February 22, 2019 **NHTSA ID NUMBER: 11181951**
**Components: EXTERIOR LIGHTING**
**NHTSA ID Number:** 11181951

**Incident Date** February 1, 2019

**Consumer Location** FLORENCE, AZ

**Vehicle Identification Number** 1GKS2BKC0HR****

**Summary of Complaint**

**CRASH No**

**FIRE No**

**INJURIES0**

**DEATHS0**

2017 YUKON (ONLY BEEN IN USE FOR 19 MONTHS) DS BRAKELIGHT ASSEMBLY (RED LED OUTTER RING) STOPPED WORKING.

**1 Affected Product**

December 21, 2018 **NHTSA ID NUMBER: 11162953**
**Components: EXTERIOR LIGHTING**
**NHTSA ID Number:** 11162953

**Incident Date** December 17, 2018

**Consumer Location** HEATH, TX

**Vehicle Identification Number** 1GKS1BKC8HR****

**Summary of Complaint**

**CRASH No**

**FIRE No**

**INJURIES0**

**DEATHS0**

PULLED OVER BY POLICE FOR MALFUNCTIONING LHR BRAKE LIGHT. ENTIRE REAR LAMP ASSEMBLY MUST BE REPLACED SINCE IT IS AN INTEGRATED CIRCUIT BOARD WITH LED LAMPS. $700 PLUS INSTALLATION. SEVERAL VICTIMS ON-LINE DISCUSSION FORUMS.

**1 Affected Product**

34.     GM also was aware of the Tail Lamp Assembly Defect from online consumer complaints. For example, the website carproblemzoo.com has reported numerous problems

related to *brake light* (under the exterior lighting category) for the 2017 GMC Yukon.  Sample

complaints include:

Brake Light problem of the 2017 GMC Yukon

**Failure Date:** 04/05/2021
Driver side rear brake light isn't working anymore. 46k miles on a 2017 GMC Yukon.

Brake Light problem of the 2017 GMC Yukon

**Failure Date:** 03/13/2021
Brake lights work intermittently. Very dangerous! passenger side brake light, stopped working completely, then came back on.

Brake Light problem of the 2017 GMC Yukon

**Failure Date:** 03/03/2021
Intermittent failure of one brake light while moving. Vehicle has only 38000 miles. This appears to be a common complaint (judging by car forums). I understand GMC makes an improved version of this assembly. Given the potential safety issue, this should be a recall.

Brake Light problem of the 2017 GMC Yukon

**Failure Date:** 03/01/2021
Both brake lights stopped working at the same time. There is no fuse. Online reports show many people with the same very dangerous, huge safety issue of their brake lights failing. The car 3 years 2 months old

Brake Light problem of the 2017 GMC Yukon

**Failure Date:** 05/21/2020
Intermittently defective tail / brake light. Led circuit breaks. Known issue. Dealer wants $800 to fix.

Brake Light problem of the 2017 GMC Yukon

**Failure Date:** 11/22/2019

Rear passenger led brake light failure. Dealer said this is a known failure item so much so that parts are on backorder nation wide

Brake Light problem of the 2017 GMC Yukon

**Failure Date:** 10/18/2019

CLASS ACTION COMPLAINT

Drivers side led brake light does not function. Vehicle has 52,000 miles. Known defect yet GMC does not offer repair. Requires $800 light assembly replacement.

Brake Light problem of the 2017 GMC Yukon

**Failure Date:** 09/24/2019
Tl the contact owns a 2017 GMC Yukon xl. The contact stated that the brake lights failed to illuminate intermittently. The contact took the vehicle to marvin k brown auto center (located at 1441 camino del rio s, san diego, CA, 619-272-6867) where it was diagnosed that the brake lights needed to be replaced. However, due to the commonality of the failure, the parts were on backorder. The vehicle was not repaired. The manufacturer was not notified. The approximate failure mileage was 64,000.

Brake Light problem of the 2017 GMC Yukon

**Failure Date:** 09/20/2019
Drivers side led brake light strip inop. Dealer says its 650 per side plus labor to replace. GMC is aware of issue but will not stand behind there [sic] product. They also lie and say it's the first they have heard of this type of failure. This is a safety concern and customer is liable for a ticket that may result from faulty gm parts

35.    Multiple tail lamp assembly complaints for 2017 Yukon vehicles were also

reported on the website CarComplaints.com.  For example,

Yukon
- miles

Dec 13, 2020 -Tail and brake light no longer working

   **- Albuquerque, NM, USA (December 13, 2020)**

Yukon
- 36,000 miles

My drivers side brake lights rarely come on. If I hit a bump they come on for a second.

   **- Temecula, CA, USA (June 1, 2020)**

36.    GM also had knowledge of problems with the tail lamp assembly based on the

same or similar problems with GM 2015-2016 Yukon vehicles, which on information and belief

share the same tail lamp design with Class Vehicles, and which GM addressed by a Special

Coverage Adjustment.

37.     On or about November 2019, GM issued Special Coverage Adjustment ("SCA")
N182180270 entitled "Tail Lamps Inoperative."  The SAC applied to GMC Yukon 2015-2016,
GMC Yukon XL 2015-2016, GMC Yukon Denali 2015-2016, GMC Yukon Denali XL 2015-
2016 vehicles.   The SCA stated that "On some 2015-2016 model year GMC Yukon, Yukon XL,
Yukon Denali, and Yukon Denali XL vehicles, stop and tail functions inside the tail lamps may
become inoperative."  Pursuant to the SCA, GM replaced the inoperative tail lamps at no charge,
reimbursed vehicle owners and lessees who paid for repairs, and covered the replacement for 6
years or 72,000 miles.

38.     On information and belief, GM redesigned the tail lamp assembly for 2021 Yukon
vehicles and introduced a new C-shape design in part to address the Tail Lamp Assembly Defect.
As Addam Ebel, GMC Lighting Studio Design Lead noted on the GMC Life website "That's
why we work closely and constantly with engineering to hone our designs. They'll take a
detailed computer model of our design and run computer simulations to see what sort of light
patterns we can expect in real-world conditions. They feed that information back to us, and we in
turn refine our surfaces to ensure the lamps perform as expected while still looking great."

39.     On information and belief, before Plaintiff purchased her Class Vehicle, GM
knew about the Tail Lamp Assembly Defect through sources not available to consumers,
including pre-release testing data, early consumer complaints to GM and its dealers, testing
conducted in response to those complaints, high failure rates and replacement part sales data, and
other aggregate data from GM dealers about the problem.

40.     GM is experienced in the design and manufacture of consumer vehicles. As an
experienced manufacturer, GM conducts tests, including pre-sale durability testing, on incoming

components, including the tail lamps, to verify the parts are free from defect and align with GM's specifications. Thus, GM knew or should have known that the subject tail lamps were defective and prone to put drivers in a dangerous position due to the inherent risk of the Defect.

41.     Additionally, GM should have learned of this widespread Defect from the sheer number of reports received from dealerships and from customer complaints directly to GM. GM's customer relations department collects and analyzes field data including, but not limited to, repair requests made at dealerships, technical reports prepared by engineers who have reviewed vehicles for which warranty coverage is being requested, parts sales reports, and warranty claims data.

42.     Defendant's warranty department similarly analyzes and collects data submitted by its dealerships in order to identify trends in its vehicles. It is Defendant's policy that when a repair is made under warranty the dealership must provide GM with detailed documentation of the problem and the fix employed to correct it. Dealerships have an incentive to provide detailed information to GM because they will not be reimbursed for any repairs unless the justification is sufficiently detailed.

43.     The existence of the Tail Lamp Assembly Defect is a material fact that a reasonable consumer would consider when deciding whether to purchase or lease a Class Vehicle. Had Plaintiffs and other Class members known of the Defect, they would have paid less for the Class Vehicles or would not have purchased or leased them.

44.     On information and belief and as confirmed by the NHTSA complaints, the Tail Lamp Assembly Defect has been so prevalent that the tail lamp assemblies at issue have been subject to multiple months-long back orders for replacements.

45.     Reasonable consumers, like Plaintiff, reasonably expect that a vehicle's tail lamp assemblies are safe, will function in a manner that will not pose a safety risk, and will remain free from defects for the entire useful life of the vehicle. Plaintiff and Class members further reasonably expect that GM will not sell or lease vehicles with known safety defects, such as the Tail Lamp Assembly Defect, and will disclose any such defects to its consumers when it learns of them. They did not expect GM to fail to disclose the Defect to them and to continually deny it.

## PLAINTIFF'S EXPERIENCE

46.     Plaintiff Rhonda Small is a citizen of the State of Florida, who resides in Palm Beach County, Florida.

47.     On or about February 21, 2017, Plaintiff purchased a new 2017 GMC Yukon XL from Lehman Buick GMC in Miami, Florida.

48.     On or about January 24, 2021, Plaintiff's vehicle experienced tail lamp failure on the passenger side.

49.     On February 16, 2021, the tail lamp assembly in Plaintiff's vehicle was replaced at a cost of $671.85.

50.     At all times, Plaintiff's Vehicle was driven in a foreseeable manner and consistent with the manner in which it was intended to be driven.

51.     When making the decision to purchase her Class Vehicle, Plaintiff understood that it was a safe and reliable vehicle and was covered by a 36 month/36,000-mile bumper-to-bumper warranty.  Plaintiff would not have purchased the vehicle if she was aware of the Defect and/or that the Defect would not be covered under warranty, or she would not have been willing to pay as much for the vehicle.

CLASS ACTION COMPLAINT

## **CLASS ALLEGATIONS**

52.     Plaintiff brings this action on her own behalf, and on behalf of a Nationwide and Florida Class (collectively the "Class") pursuant to the Federal Rules of Civil Procedure, Rule 23(a), 23(b)(2), and/or 23(b)(3) as follows:

**Nationwide Class**:

All persons or entities who purchased or leased in the United States a GM Model Year 2017-2019 Yukon, Yukon XL, Yukon Denali, or Yukon Denali XL vehicle ("Class Vehicles").

**Florida Class**:

All persons or entities who purchased or leased in the State of Florida a GM Model Year 2017-2019 Yukon, Yukon XL, Yukon Denali, or Yukon Denali XL vehicle ("Florida Vehicles").

53.     Excluded from each proposed Class are GM, its affiliates, employees, officers and directors, persons or entities that purchased the Class Vehicles for resale; any entity in which GM has a controlling interest; and the Judge(s) assigned to this case and their spouses.  Plaintiff reserves the right to modify, change, or expand the various class definitions set forth above based on discovery and further investigation.

54.     Numerosity:  Upon information and belief, the Class is so numerous that joinder of all members is impracticable.  While the exact number and identities of individual members of the Class are unknown at this time since such information is in the sole possession of GM and obtainable by Plaintiff only through the discovery process, Plaintiff believes, and on that basis

CLASS ACTION COMPLAINT

alleges, that hundreds of thousands of Class Vehicles have been sold and leased in each of the States that are the subject of the Class.

55.     <u>Existence and Predominance of Common Questions of Fact and Law</u>:  Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting individual Class members. These common legal and factual questions include, but are not limited to whether

     a.  The Class Vehicles were sold with a Tail Lamp Assembly Defect;

     b.  GM knew of the Tail Lamp Assembly Defect but failed to disclose the problem and its consequences to its customers;

     c.  A reasonable consumer would consider the Tail Lamp Assembly Defect or its consequences to be material;

     d.  GM's conduct violates Florida's FDUTPA; and,

     e.  GM's conduct constitutes breach of any warranty.

56.     <u>Typicality</u>:  All of Plaintiff's claims are typical of the claims of the Class since Plaintiff purchased her Class Vehicle with the Tail Lamp Assembly Defect, as did each member of the Class.  Furthermore, Plaintiff and all members of the Class sustained monetary and economic injuries including, but not limited to, ascertainable losses arising out of GMs' wrongful conduct.  Plaintiff is advancing the same claims and legal theories on behalf of herself and all absent Class members.

57.     <u>Adequacy</u>:  Plaintiff is an adequate representative because her interests do not conflict with the interests of the Class that she seeks to represent, she has retained counsel competent and highly experienced in complex class action litigation, and she intends to prosecute

this action vigorously. The interests of the Class will be fairly and adequately protected by

Plaintiff and her counsel.

58.     Superiority:  A class action is superior to all other available means of fair and

efficient adjudication of the claims of Plaintiff and members of the Class.  The injury suffered by

each individual Class member is relatively small in comparison to the burden and expense of

individual prosecution of the complex and extensive litigation necessitated by GM's conduct.  It

would be virtually impossible for members of the Class individually to redress effectively the

wrongs done to them.  Even if the members of the Class could afford such individual litigation,

the court system could not.  Individualized litigation increases the delay and expense to all

parties, and to the court system, presented by the complex legal and factual issues of the case.

By contrast, the class action device presents far fewer management difficulties, and provides the

benefits of single adjudication, an economy of scale, and comprehensive supervision by a single

court.  Upon information and belief, members of the Class can be readily identified and notified

based on, *inter alia*, GM's vehicle identification numbers, warranty claims, registration records,

and databases of complaints.

**ESTOPPEL FROM PLEADING AND TOLLING
OF APPLICABLE STATUTES OF LIMITATIONS**

59.     GM has acted, and refused to act, on grounds generally applicable to the Class,

thereby making appropriate final equitable relief with respect to the Class as a whole. Defendant

General Motors LLC has possessed exclusive knowledge about the Defect, including from its

customer complaint and warranty records, internal emails, reports, analyses, and assessment of

engineers, that is unavailable to Plaintiff and the proposed Class members. GM is estopped from

relying on any statutes of limitation or repose due to its acts of concealment. Defendant knew about the Defect in the Class Vehicles for years based in part on the high number of complaints but concealed it and/or failed to alert purchasers or potential purchasers.  Defendant should not be permitted to profit from its wrongdoing.

60.     Further, GM actively concealed its wrongdoing as alleged herein. As discussed above, GM monitors its customers' discussions on online forums and actively concealed the Defect by denying its existence and blaming the Class members for the problems.  The NHTSA complaints alleged above confirm that GM was made aware of the issue and sought to actively conceal the issue after Plaintiff's cause of action accrued.  For example, in a NHTSA complaint dated October 15, 2019, a 2017 GMC Yukon owner experienced the Tail Lamp Assembly Defect as alleged herein and wrote that the "manufacturer was made aware of the failure and informed the contact that the VIN was not included in a recall.  The contact was advised to call NHTSA to file a complaint."

61.     In addition, the December 2018 Technical Services Bulletin No. 01-08-42-001L, alleged above, evidences GM's active concealment.  Rather than acknowledging the Tail Lamp Assembly Defect, which was well known by GM by that time at least with respect to 2017 Class models, GM actively concealed the Defect by purporting to "define the causes of condensation in exterior lamps and includes guidelines for determining the difference between a lamp with a normal atmospheric condition (condensation) and a lamp with a water leak," rather than acknowledging that the tail lamp assemblies were defectively designed as alleged herein and/or that the defective design was responsible for the condensation and caused the tail lights to fail.

62.     GM doubled down on its active concealment by issuing a November 2019 GM Special Coverage Adjustment ("SCA") N182180270 entitled "Tail Lamps Inoperative," described above. The SCA was limited to 2015-2016 Yukon vehicles only.  However, as alleged above, by the time that GM issued this SCA, GM was well aware of the Tail Lamp Assembly Defect in 2017 and 2018 Class vehicles.  Yet, SCA actively concealed the Defect by not covering the 2017 and 2018 Class Vehicles in the SCA.

63.     Further, Defendant maintained exclusive control over information concerning the known, but non-public, Defect and the number of Class Vehicles at issue; Plaintiff and Class members, therefore, could not reasonably have known about the existence of the Defect or the number of Class Vehicles affected. Thus, Defendant is estopped from relying on any statutes of limitations or repose that might otherwise be applicable to the claims asserted herein.

64.     The tail lamp assembly on Plaintiff's vehicle became inoperative on or about January 24, 2021, which is when she discovered that the tail lamp assembly was not working when a driver who was driving behind her notified her that the tail lamp was not working.  As alleged above, before that time, due, inter alia, to GM's superior and exclusive knowledge, Plaintiff did not discover, or by the exercise of reasonable diligence, could not have discovered, the injuries that would lead to her causes of action against the Defendant.

## EXPRESS AND IMPLIED WARRANTIES

65.     For each Class Vehicle sold by GM, an express written warranty was issued which covered components of the vehicle, including but not limited to, the Tail Lamp Assembly. Each Class Vehicle was covered by GM's New Vehicle Limited Warranty ("NVLW").  The Class Vehicles are defective in design or material in violation of the NVLW.

66.     In relevant part, the NVLW states:

**What Is Covered**

**Repairs Covered:** The warranty covers repairs to correct any vehicle defect, not slight noise, vibrations, or other normal characteristics of the vehicle due to materials or workmanship occurring during the warranty period. Needed repairs will be performed using new, remanufactured, or refurbished parts.

**No Charge:** Warranty repairs, including towing, parts, and labor, will be made at no charge.

**Obtaining Repairs:** To obtain warranty repairs, take the vehicle to a Chevrolet dealer facility within the warranty period and request the needed repairs. Reasonable time must be allowed for the dealer to perform necessary repairs.

**Warranty Period:** The warranty period for all coverages begins on the date the vehicle is first delivered or put in use and ends at the expiration of the coverage period.

**Bumper-to-Bumper Coverage:** The complete vehicle is covered for 3 years or 36,000 miles, whichever comes first, except for other coverages listed here under "What Is Covered" and those items listed under "What Is Not Covered" later in this section.

\* \* \*

**What Is Not Covered**

**Tire and Wheel Damage or Wear:** Normal tire wear or wear-out is not covered. Tire wear is influenced by many variables such as road conditions, driving styles, vehicle weight, and tire construction. Uniform tire wear is a normal condition, and is not considered a defect. Road hazard damage such as punctures, cuts, snags, and breaks resulting from pothole impact, curb impact, or from other objects is not covered.

67.     Pursuant to its express and written warranties, GM warranted the Class Vehicles'

Tail Lamp Assembly to be free of design defects and to correct defects which occurred during

the first 3 years or 36,000 miles, whichever came first.

68.     Further, as alleged above, GM is equitably estopped from asserting any time and

mileage limitations with respect to repairs that were sought outside the 3-year, 36,000-mile

CLASS ACTION COMPLAINT

coverage period and/or such terms are unconscionable because GM was aware of the Defect, possessed superior and exclusive knowledge of the Defect, and actively concealed that knowledge while refusing to provide repairs or replacement parts under warranty. The doctrine of unconscionability can be applied to limitations on the period in which a purchaser is permitted to bring a warranty claim, particularly in cases where the claims are premised on the discovery of a latent defect.

69.     GM also sold or leased the Class Vehicles to Class members under implied warranties of merchantability and fitness for a particular purpose. GM impliedly warranted the Class Vehicles to be merchantable, fit for the ordinary purposes for which they were intended to be used, including the guarantee that they were in a safe and non-defective condition for use by their owners or lessees for the ordinary purpose for which they were intended and were not otherwise injurious. GM is and was under a duty to design, construct, manufacture, inspect, and test the Class Vehicles so as to make them suitable for the ordinary purposes of their use— transportation at interstate speeds.

70.     GM breached its warranties for the Class Vehicles as a result of the latent defects in the Tail Lamp Assembly by: denying the existence of the Defect when confronted with complaints; failing to repair the Class Vehicles as warranted; and otherwise inadequately repairing the Defect through ineffective repairs or replacement of the defective Tail Lamp Assembly with an equally defective Tail Lamp Assembly.

71.     In breach of GM's warranties, the Class Vehicles are defective, unsafe, unfit for the ordinary purposes for which they are intended to be used, and not merchantable.

## COUNT ONE

### Violation of the Magnuson-Moss Warranty Act 15 U.S.C. §§ 2301, *et seq*.
### (Nationwide Class)

72.     Plaintiff, individually and for the Nationwide Class, hereby incorporates paragraphs 1 through 71  as though fully set forth herein.

73.     For each Class Vehicle, GM issued an express written warranty that covered the vehicle, including but not limited to the Tail Lamp Assembly, and which warranted the vehicle to be free of defects at the time of delivery, and the Class Vehicles had an implied warranty of merchantability.

74.     GM breached its express warranties by offering for sale and selling vehicles that were by design and construction defective and unsafe, thereby subjecting the occupants of the Class Vehicles purchased or leased to damages and risks of loss and injury.

75.     Plaintiff and members of the class are "consumers" within the meaning of the Magnuson-Moss Act, 15 U.S.C. § 2301(3).

76.     Defendant GM is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Act, 15 U.S.C. § 2301(4) and (5).

77.     The Class Vehicles at issue are "consumer products" within the meaning of the Magnuson-Moss Act, 15 U.S.C. § 2301(6).

78.     Defendant GM's written and implied warranties relate to the future performance of its vehicles because it promised that the tail lamp assembly of the Class Vehicles would perform adequately for a specified period of time or mileage, whichever came first.

79.     Defendant GM has breached and continues to breach its written and implied warranties of future performance, thereby damaging Plaintiff and similarly situated Nationwide Class members, when their Class Vehicles fail to perform as represented due to an undisclosed Tail Lamp Assembly Defect. GM fails to fully cover or pay for necessary inspections, repairs and/or vehicle replacements for Plaintiff and the Nationwide Class.

80.     Plaintiff and the other Nationwide Class members have had sufficient direct dealings with either GM or its agents (e.g., dealerships and technical support) to establish privity of contract between GM on one hand, and Plaintiff and each of the other Nationwide Class members on the other hand.  Nonetheless, privity is not required here because Plaintiff and each of the other Nationwide Class members are intended third-party beneficiaries of contracts between GM and its dealers.  GM does business in Florida through its authorized dealerships, and Plaintiff purchased a vehicle through on these dealerships.  GM's warranties are intended for consumer of GM vehicles. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit the consumers only.

81.     As a result of Defendant's continued breach of its warranties, Plaintiff has suffered damages including the costs of diagnosis and the repair of her vehicle, the loss of use of her vehicle, and other consequential damages.

82.     Plaintiff and the Nationwide Class seek full compensatory and consequential damages allowable by law, appropriate equitable relief including injunctive relief, a declaratory judgment, a court order enjoining Defendant's wrongful acts and practices, restitution, attorney's fees and costs, and any other relief to which Plaintiff and the Nationwide Class may be entitled.

CLASS ACTION COMPLAINT

## COUNT TWO

### Breach of Express Warranties (Florida Class)

83.     Plaintiff, individually and for the Florida Class, hereby incorporates paragraphs 1 through 71 as though fully set forth herein.

84.     For each Class Vehicle sold by GM, an express written warranty was issued that covered the vehicle, including but not limited to the Tail Lamp Assembly, and which warranted the vehicle to be free of defects at the time of delivery.

85.     GM breached its warranties by offering for sale and selling vehicles that were by design and construction defective and unsafe, thereby subjecting the occupants of the Class Vehicles purchased or leased to damages and risks of loss and injury.

86.     GM continues to breach its warranties by failing to cover the cost of repair or replacement of the tail lamp assembly in Plaintiff's vehicle as warranted.

87.     As a result of Defendant's continued breach of its warranties, Plaintiff has suffered damages including the costs of diagnosis and the repair of her vehicle, the loss of use of her vehicle, and other consequential damages.

88.     WHEREFORE Plaintiff and the Florida Class seek full compensatory and consequential damages allowable by law, appropriate equitable relief including injunctive relief, a declaratory judgment, a court order enjoining Defendant's wrongful acts and practices, restitution, attorney's fees and costs on behalf of the Florida Class, and any other relief to which Plaintiff and the Florida Class may be entitled.

## COUNT THREE

### Breach of Implied Warranties (Florida Class)

89.     Plaintiff, individually and for the Florida Class, hereby incorporates paragraphs 1 through 71 as though fully set forth herein.

90.     GM impliedly warranted that the Class Vehicles, which it designed, manufactured, sold, or leased to Plaintiff and members of the Florida Class, were merchantable, fit and safe for their ordinary use, and not otherwise injurious to consumers.

91.     Because the Class Vehicles are equipped with the defective Tail Lamp Assembly, the vehicles purchased or leased and used by Plaintiff and Florida Class members are unsafe, unfit for use when sold, threatened injury to their occupants, and were not merchantable. GM breached the implied warranty of merchantability in the sale or lease of the Class Vehicles to Plaintiff and members of the Florida Class in that the vehicles were not fit for their ordinary purpose and not merchantable.

92.     Plaintiff and the other Florida Class members have had sufficient direct dealings with either GM or its agents (e.g., dealerships and technical support) to establish privity of contract between GM on one hand, and Plaintiff and each of the other Florida Class members on the other hand.  Nonetheless, privity is not required here because Plaintiff and each of the other Florida Class members are intended third-party beneficiaries of contracts between GM and its dealers.  GM does business in Florida through its authorized dealerships, and Plaintiff purchased her vehicle from an authorized dealer who was an agent of GM. GM's warranties are intended for consumers of GM vehicles. Plaintiff was the intended consumer of the vehicle, and the warranty was intended to benefit the consumer, not the dealership.   The dealers were not

Page 47

intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit the consumers only.

93.     As a direct and proximate result of GM's breach of the implied warranty of merchantability and fitness for a particular purpose, Plaintiff has suffered damages including the costs of diagnosis and the attempted repair of his vehicle, the loss of use of his vehicle, and other consequential damages.

94.     WHEREFORE Plaintiff and the Florida Class seek full compensatory and consequential damages allowable by law, appropriate equitable relief including injunctive relief, a declaratory judgment, a court order enjoining Defendant's wrongful acts and practices, restitution, attorney's fees and costs on behalf of the class, and any other relief to which Plaintiff and the Florida Class may be entitled.

## **COUNT FOUR**

### **Violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") Fla. Stat. §§ 501.201, *et seq*. (Florida Class)**

95.     Plaintiff, individually and for the Florida Class, hereby incorporates paragraphs 1 through 71 as though fully set forth herein.

96.     Plaintiff brings this claim individually and on behalf of the Florida Class.

97.     Plaintiff and Class members who purchased or leased Class Vehicles are "consumers" under FDUTPA.  Defendant's practices, acts, policies and course of conduct violated FDUTPA's prohibition on unfair and deceptive conduct in that:

(a)     At the time of sale, Defendant knowingly and intentionally omitted and concealed material information regarding the Class Vehicles by failing to disclose to Plaintiff and Class members the defective Tail Lamp Assembly. Defendant had a duty to notify Plaintiff and other Class members at the point of sale about the presence of the Tail Lamp Assembly but failed to make any disclosure whatsoever.

(b)     Thereafter, Defendant failed to disclose the Defect to Plaintiff and the Class members, either through warnings or notices, and/or actively concealed from them that the Class Vehicles' tail lamp assemblies were defective, even though the company knew of such Defects: (1) at the time of manufacture, when it created the Tail Lamp Assembly in a manner unable to provide for safe driving; (2) from complaints to NHTSA and to web forums actively monitored by GM; (3) when GM's internal analyses determined the ubiquity of the problem.

(c)     Based on these and other, internal studies and investigations, Defendant knew that the tail lamp assembly would be compromised and that the Class Vehicles would have the Tail Lamp Assembly Defect.

(d)     Nonetheless, Defendant forced Plaintiff and Class members to expend money at its dealerships to diagnose and ineffectively repair Class Vehicles, despite Defendant's prior knowledge of the Defect at the time of purchase.

(e)     Defendant, in administering its limited warranty, engaged in materially misleading deceptive acts and practices by classifying the Defect outside of warranty coverage and replacing the defective part with equally defective units.

98.     Furthermore, Defendant engaged in materially misleading and deceptive acts by continuing to sell the Class Vehicles to the consuming public and to represent that these vehicles were in good working order, merchantable, and not defective, despite Defendant's knowledge that the vehicles would not perform as intended, represented, and warranted and that the above-described Defect would cause purchasers to incur significant out-of-pocket costs and expenses.

99.     Defendant's conduct was likely to deceive reasonable consumers, including Plaintiff and Class members, about the safety and reliability of the Class Vehicles and the true value of the Class Vehicles.

100.    Defendant's acts and omissions are unfair in that they (1) offend public policy; (2) are immoral, unethical, oppressive, or unscrupulous; and (3) cause substantial injury to consumers. Defendant has, through knowing, intentional, material omissions, concealed the true defective nature of the Class Vehicles.

101.    Defendant's acts and omissions are also unfair in that they cause substantial injury to consumers far in excess of any conceivable benefit; and are injuries of a nature that they could not have been reasonably avoided by consumers.

102.    Defendant's acts and omissions are deceptive in that Defendant has, through knowing, intentional, material omissions, concealed the true defective nature of the Class Vehicles. In making these misrepresentations of fact and/or material omissions to prospective customers while knowing such representations to be false, Defendant has misrepresented and/or knowingly and intentionally concealed material facts in breach of its duty not to do so.

103.    Members of the public, including Plaintiff, were deceived by Defendant's failure to disclose and could not discover the defect themselves before suffering their injuries. But for

Defendant's deception, Plaintiff and other Class members would not have bought their Class Vehicles or would have paid less for them.

104.     As a direct and proximate result of these unfair acts or practices, Plaintiff and Class members have been damaged because: they purchased Class Vehicles they otherwise would not have; paid more for Class Vehicles than they otherwise would have; paid for diagnoses, repairs, and replacements, towing, and/or rental cars; and are left with Class Vehicles of diminished value and utility because of the Defect.  Meanwhile, GM has sold more Class Vehicles than it otherwise could have and charged inflated prices for Class Vehicles, thereby unjustly enriching itself.

105.     WHEREFORE Plaintiff and the Florida Sub-Class seek full compensatory damages allowable by law, attorney's fees, costs, appropriate equitable relief including injunctive relief, a declaratory judgment that Defendant's conduct is unlawful, a court order enjoining Defendant's wrongful acts and practices, and any other relief to which Plaintiff and the Florida Class may be entitled.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all those similarly situated, as set forth above, prays for relief and judgment against Defendant as follows:

1.     Plaintiff, on behalf of herself, and members of the Class, requests the Court to enter judgment against Defendant as follows:

(a)     An order certifying the proposed Class designating Plaintiff as named representative of the Class, and designating Plaintiff's Counsel as Class Counsel;

(b)     An order awarding Plaintiff and the Class members injunctive and declaratory relief provided by and pursuant to the statutes cited above, including a declaration that Defendant's activities are unlawful and an order enjoining those activities;

(c)     Entry of judgment against Defendant for the violations alleged herein;

(d)     An order awarding Plaintiff and Class members compensatory, actual, statutory, consequential, and/or any other form of damages provided by and pursuant to the causes of action cited above;

(e)     An award of punitive damages;

(h)     An order awarding Plaintiff and the Class members restitution, disgorgement and/or other equitable relief provided by and pursuant to the causes of action cited above, including an order requiring specific performance of the Defendant's obligations;

(i)     An award to Plaintiff of the costs of this action, including reasonable attorneys' fees, and, where applicable, expert fees;

(j)     An order awarding Plaintiff and the Class members pre-judgment and post judgment interest; and

(k)     An award of such other and further relief as the Court may deem just and appropriate.

## <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Federal Rules of Civil Procure, Rule 38(b), Plaintiff hereby demands a trial

by jury as to all claims so triable.

Dated: June 29, 2021

By: <u>/s/ *Jonathan E. Freidin*</u>

Philip Freidin (Fla. Bar No. 118519)
Jonathan E. Freidin (Fla. Bar No. 98955)
FREIDIN BROWN, P.A.
One Biscayne Tower
2 South Biscayne Boulevard, Suite 3100
Miami, Florida 33131
jf@fblawyers.net
pf@fblawyers.net
pleadings@fblawyers.net

Jordan L. Lurie
Ari Y. Basser
POMERANTZ LLP
1100 Glendon Avenue
15th Floor
Los Angeles, CA 90024
Phone (310) 432-8492
jllurie@pomlaw.com
abasser@pomlaw.com
*(Pending approval of application for*
*admission pro hac vice)*

Cam Justice (Fla. Bar No. 119105)
Adam Breit (Fla. Bar No. 102541)
JUSTICE LAW
8551 W. Sunrise Blvd., Suite 300
Plantation, Florida 33322
cjustice@justiceinjurylawyer.com
abreit@justiceinjurylawyer.com
justicepleadings@justiceinjurylawyer.com

CLASS ACTION COMPLAINT