**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**CASE NO. 21-81146-CIV-CANNON**

**RHONDA SMALL**,

      Plaintiff,

v.

**GENERAL MOTORS LLC**,

      Defendant.

_____/

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS [ECF No. 47]

**THIS CAUSE** comes before the Court upon Defendant's Motion to Dismiss Plaintiff's First Amended Complaint (the "Motion") [ECF No. 47]. The Court has considered the Motion [ECF No. 47], Plaintiff's Response [ECF No. 49], Defendant's Reply [ECF No. 51], and the full record. The Court also held a hearing on the Motion [ECF No. 60]. For the reasons set forth below, Defendant's Motion to Dismiss [ECF No. 47] is **GRANTED**. Counts One, Two, and Three are dismissed with prejudice. Plaintiff will have one final opportunity to plead Count Four.

### BACKGROUND AND PROCEDURAL HISTORY[1]

This case is a consumer class action arising out of an alleged safety defect in the tail lamp assemblies of certain GM vehicle models [ECF No. 42]. According to Plaintiff, GM Model Year 2015-2017 Yukon, Yukon XL, Yukon Denali, and Yukon Denali XL vehicles ("Class Vehicles") have a defect that causes the tail lamp housing or assembly to become inoperative, resulting in brake lights that fail to illuminate and thus pose increased risk of rear end collision [ECF No. 42 ¶ 1].

---

[1] The following facts are drawn from Plaintiff's First Amended Complaint [ECF No. 42] and the parties' judicially noticed exhibits [ECF Nos. 53–54].

Plaintiff Rhonda Small alleges that she purchased a new 2017 GMC Yukon XL from an authorized dealership, Lehman Buick GMC, on February 21, 2017 [ECF No. 42 ¶ 57; ECF No. 54-1 (sales contract between co-buyer Plaintiff and seller Lehman Buick GMC)]. Plaintiff further alleges that she is both a co-buyer and a co-owner of the vehicle and is listed as a co-owner on the vehicle's registration [ECF No. 42 ¶ 57; *see* ECF No. 45-5].

Plaintiff's vehicle was covered by an express written warranty covering the vehicle's components for 3 years or 36,000 miles, whichever came first [ECF No. 42 ¶¶ 80–81]. There is no dispute that such warranty came from the authorized dealer, Lehman Buick GMC [ECF No. 60 (Motion Hearing held on May 2, 2022)]. In December 2018, GM issued Technical Services Bulletin No. 01-08-42-001L, which applied to all 2019 and prior GM vehicles, acknowledging that there was a condensation problem affecting the vehicles' exterior lamps [ECF No. 42 ¶¶ 28, 75]. In November 2019, GM issued a Special Coverage Adjustment ("SCA") to address the defect, offering to replace the inoperative tail lamps at no charge, to reimburse vehicle owners and lessees who paid for repairs, and to cover the replacement for 6 years or 72,000 miles [ECF No. 42 ¶ 2]. That initial SCA covered only model year 2015-2016 Class Vehicles [ECF No. 42 ¶ 2]. In May 2020, GM revised the SCA to also cover model year 2017 Class Vehicles and issued a notice to its authorized dealers regarding same [ECF No. 42 ¶ 2; ECF No. 53-2; ECF No. 53-3].

Plaintiff alleges that she was unaware of the defect at the time of the purchase and was also unaware of the SCA [ECF No. 42 ¶¶ 58–59]. In June 2020, GM sent a copy of the May 2020 revised SCA to the "Buyer" listed on the sales contract (Angiology Corporation of America) but did not also send the revised SCA to the "Co-Buyer" (Plaintiff) listed on the sales contract [ECF No. 53-4].

According to Plaintiff, her vehicle suffered tail lamp failure on the passenger side on or about January 24, 2021 [ECF No. 60]. Plaintiff inquired about the issue with another GM authorized dealership, Sawgrass Buick GMC ("Sawgrass"), who advised that the repair to Plaintiff's vehicle was not covered under warranty and would cost more than $600 [ECF No. 61]. On February 16, 2021, the tail lamp assembly in Plaintiff's vehicle was replaced at a cost of $671.85 [ECF No. 42 ¶ 63].

Plaintiff filed her initial complaint against General Motors LLC ("GM") on June 29, 2021 [ECF No. 1]. Following a Motion to Dismiss by GM [ECF No. 26], Plaintiff filed the operative First Amended Complaint ("FAC") [ECF No. 42]. The FAC sets forth four causes of action: (1) Violation of the Magnuson-Moss Warranty Act (MMWA), 15 U.S.C. §§ 2301, *et seq.* (Count One); (2) Breach of Express Warranties (Count Two); (3) Breach of Implied Warranties (Count Three); and (4) Violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") Fla. Stat. §§ 501.201, *et seq.* (Count Four) [ECF No. 42 ¶¶ 87–126]. Plaintiff seeks to bring Count One on behalf of a nationwide class and Counts Two through Four on behalf of a Florida class [ECF No. 42 ¶ 66].

Defendant's Motion to Dismiss [ECF No. 47] is ripe for adjudication [ECF Nos. 49, 51].

## LEGAL STANDARDS

### A. Federal Rule of Civil Procedure 12(b)(1)

A Rule 12(b)(1) motion challenges the district court's subject matter jurisdiction and takes one of two forms: a "facial attack" or a "factual attack." *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990). A facial attack on the complaint requires the court merely look to see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, taking as true the allegations in the plaintiff's complaint. *Id.* "By contrast, a factual attack on a complaint challenges the

existence of subject matter jurisdiction using material extrinsic from the pleadings, such as affidavits or testimony." *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1233 (11th Cir. 2008).

Article III of the U.S. Constitution constrains federal courts to decide only "Cases" and "Controversies." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559–60 (1992) (quoting U.S. Const. art. III, § 2, cl. 1). One element of this case-or-controversy requirement is that plaintiffs "must establish that they have standing to sue." *Raines v. Byrd*, 521 U.S. 811, 818 (1997). To satisfy the standing requirements derived from Article III, "a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and 3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180–81 (2000) (quoting *Lujan*, 504 U.S. at 560–61).

**B. Federal Rule of Civil Procedure 12(b)(6)**

Federal Rule of Civil Procedure 8(a)(2) requires the complaint to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To avoid dismissal under Rule 12(b)(6), a complaint must allege facts that, if accepted as true, "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see* Fed. R. Civ. P. 12(b)(6). A claim for relief is plausible if the complaint contains factual allegations that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 545). Conclusory allegations,

unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal. *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).

## DISCUSSION

Defendant first seeks dismissal of the FAC for lack of standing pursuant to Rule 12(b)(1) [ECF No. 47 pp. 16–27]. Defendant also argues that each of Plaintiff's claims should be dismissed for failure to state a claim pursuant to Rule 12(b)(6) based on various deficiencies [ECF No. 47 pp. 16–27]. The Court addresses these arguments in turn as necessary to resolve the Motion.

## I.    Standing

GM initially argued that Plaintiff lacked Article III standing to bring her claims because she did not purchase the vehicle that formed the basis of her claims [ECF No. 47 pp. 13–14 (arguing that a corporate entity purchased the car)]. In response, Plaintiff pointed to allegations in the FAC stating that she purchased the car from an authorized dealer on February 21, 2017 [ECF No. 49 p. 9 (referring to ECF No. 42 ¶ 57)]. Plaintiff also produced various documents, later judicially noticed by the Court [ECF No. 55], confirming that she did in fact purchase the vehicle as the "co-buyer" [ECF No. 49 p. 9; ECF No. 54-1 through 54-5]. GM now concedes that Plaintiff has Article III standing to bring her individual claims based on her status as a co-purchaser. No further discussion of this issue is required.

There remains the question of class standing, however: does Plaintiff have standing to assert claims on behalf of a class that includes purchasers of other vehicle models and model years beyond the 2017 GMC Yukon XL she purchased?[2] The Court declines at this stage to resolve that

---

[2] Courts in this district are split on this issue. *Compare, e.g.*, *Weiss v. Gen. Motors LLC*, 418 F. Supp. 3d 1173, 1179–80 (S.D. Fla. 2019); *Heuer v. Nissan N.A., Inc.*, No. 17-60018-CIV, 2017 WL 3475063, at *5 (S.D. Fla. Aug. 11, 2017), *with Toback v. GNC Holdings, Inc.*, No.

substantive question in light of the Court's dismissal of Plaintiff's claims, as stated below.  To the extent Plaintiff manages in the future to plead a plausible FDUTPA claim for relief, the Court will address the question of class standing prior to the class certification stage.  *See Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000) ("[I]t is well-settled that prior to the certification of a class, and technically speaking before undertaking any formal typicality or commonality review, the district court must determine that at least one named class representative has Article III standing to raise each class subclaim.").

## II.     Failure to State a Claim

### A.     Breach of Warranty Claims (Counts Two through Three)

In Counts Two and Three, Plaintiff seeks economic damages for breach of express and implied warranty under Florida law.  GM argues that these claims should be dismissed because Plaintiff purchased the vehicle from a dealer rather than from GM—leaving Plaintiff without the requisite contractual privity with GM to state a breach of warranty claim under Florida Law [ECF No. 47 pp. 16–17].  Plaintiff disagrees, arguing that she falls within the so-called "third-party beneficiary" exception to the privity requirement, relying principally on federal district court case law.  According to Plaintiff, she is the intended third-party beneficiary of unspecified contracts between GM and its authorized dealer and therefore can sue GM for breach of warranty even though she purchased the vehicle from the dealer [ECF No. 49 pp. 12–14; ECF No. 42 ¶¶ 101, 109].  Plaintiff acknowledges federal courts' competing approaches to applying a third-party beneficiary exception in this context, and she further appears to recognize

---

13-80526-CIV, 2013 WL 5206103 at *5 (S.D. Fla. Sept. 13, 2013); *Bohlke v. Shearer's Foods*, LLC, No. 14-CV-80727, 2015 WL 249418, at *4 (S.D. Fla. Jan. 20, 2015).

that this Court would need to apply the third-party beneficiary exception for her to overcome the absence of direct privity with Defendant GM [ECF No. 49 pp. 12–14].

"Under Florida law, a plaintiff cannot recover economic losses for breach of implied warranty in the absence of privity." *Mesa v. BMW of N. Am., LLC*, 904 So. 2d 450, 458 (Fla. Dist. Ct. App. 2005) (citing *Kramer v. Piper Aircraft Corp.*, 520 So. 2d 37 (Fla. 1988); *Weiss v. Johansen*, 898 So. 2d 1009, 1012 (Fla. Dist. Ct. App. 2005); *see also T.W.M. v. Am. Med. Sys., Inc.*, 886 F. Supp. 842, 844 (N.D. Fla. 1995) (citing *Kramer*, 520 So. 2d at 37) ("The law of Florida is that to recover for the breach of a warranty, either express or implied, the plaintiff must be in privity of contract with the defendant."); *Kelly v. Lee Cnty. RV Sales Co.*, 819 F. App'x 713, 717 (11th Cir. 2020) (citing *Mesa*, 904 So. 2d at 458) ("Under Florida law, a consumer must enjoy privity of contract with a supplier to recover for breach of an implied warranty."); *Rees v. Engineered Controls Int'l, Inc.*, No. 606CV1558ORL19JGG, 2006 WL 3162834, at *2 (M.D. Fla. Nov. 2, 2006) ("Since 1988, Florida law has required privity between the manufacturer of the allegedly defective product and the consumer of such produce in order for the consumer to assert an implied warranty claim.  Thus, a Plaintiff who purchases a product but does not buy it directly from the defendant, is not in privity with that defendant.") (internal quotation marks omitted).

Florida state courts have dismissed breach of warranty claims for lack of contractual privity where the plaintiff purchaser did not purchase a product directly from the defendant.[3]  And Plaintiff

---

[3] *See, e.g.*, *Rentas v. DaimlerChrysler Corp.*, 936 So. 2d 747, 751 (Fla. Dist. Ct. App. 2006) (affirming dismissal of breach of implied warranty claim against DaimlerChrysler for lack of contractual privity where plaintiffs purchased used vehicle from dealership from DaimlerChrysler); *Cerasani v. Am. Honda Motor Co.*, 916 So. 2d 843, 847 (Fla. Dist. Ct. App. 2005) (affirming dismissal of breach of implied warranty claim against American Honda for lack of contractual privity where plaintiff did not lease vehicle from American Honda but instead leased vehicle from a lessor that purchased the vehicle from a dealership); *Mesa*, 904 So. 2d at 458 (affirming trial court's grant of summary judgment to BMW on breach of implied warranty claim because plaintiff leased vehicle from dealership, leaving "no privity of contract between [plaintiff]

cites no governing Florida state case permitting a breach of warranty claim against a party with whom the plaintiff lacked contractual privity.[4]

Despite the weight of state authority dismissing such claims for lack of privity, some federal courts applying "third-party beneficiary" law have permitted vehicle purchasers to pursue Florida breach of warranty claims against manufacturers despite lack of privity. *See Sanchez-Knutson v. Ford Motor Co.*, 52 F. Supp. 3d 1223, 1233–34 (S.D. Fla. 2013) ("'Literal privity can be finessed by a proxy: direct beneficiary or third-party beneficiary status.'" (quoting *In re Masonite Corp. Hardboard Siding*, 21 F. Supp. 2d 593, 599 (E.D. La. 1998) (citing *Warren v. Monahan Beaches Jewelry Ctr., Inc.*, 548 So. 2d 870, 872 (Fla. Dist. Ct. App. 1989), and Fla. Stat. § 672.318); *see also Varner v. Dom. Corp.*, No. 16-22482 CIV, 2017 WL 3730618, at *12 (S.D. Fla. Feb. 7, 2017); *Ohio State Troopers Ass'n v. Point Blank Enters.*, No. 17-62051, 2018

---

[4] and BMW"); *Johansen*, 898 So. 2d at 1012 ("[I]n order to recover for breach of a warranty either express or implied, the plaintiff must be in privity of contract with the defendant.").

[4] Plaintiff does cite *Manheim v. Ford Motor Co.*, 201 So. 2d 440 (Fla. 1967), in which the Florida Supreme Court held, in the car purchasing context, that an implied warranty claim "may be brought against a manufacturer notwithstanding want of privity" [ECF No. 49 pp. 13–14]. *Id.* at 441–42 (Fla. 1967). In a series of decisions ultimately ending with *Kramer v. Piper Aircraft Corp.*, 520 So. 2d 37 (Fla. 1988), however, the Supreme Court impliedly abrogated that statement in *Manheim*, or at least significantly undermined it. To recap, after *Manheim* came *West v. Caterpillar Tractor Co.*, 336 So. 2d 80 (Fla. 1976). In *West*, the Florida Supreme Court held that a manufacturer of a defective product could be held liable under the doctrine of strict liability in tort "as district from breach of implied warranty"—even in the absence of contractual privity. *Id.* at 89. *West* then led to *Kramer v. Piper Aircraft Corp.*, 520 So. 2d 37 (Fla. 1988), in which the Florida Supreme Court clarified that its earlier decision to adopt a strict liability action in *West* had the effect of abolishing, or supplanting, the "no-privity, breach of implied warranty cause of action." *Id.* at 39. In other words, post *Kramer*, there remains an implied breach of warranty cause of action "where privity of contract exists," *id.* at 39 n.4, but not where it does not exist (unless otherwise specified by statute, as in the case of Fla. Stat. § 672.318). This understanding of *West* and *Kramer*—that privity is required to sue for implied breach of warranty—is consistent with how those decisions have been interpreted by Florida's intermediate courts. *See, e.g.*, *Mesa*, 904 So. 2d at 458; *Ocana v. Ford Motor Co.*, 992 So. 2d 319, 325 (Fla. Dist. Ct. App. 2008); *Ashley Square, Ltd. v. Contractors Supply Orlando, Inc.*, 532 So. 2d 710, 711 n.1 (Fla. Dist. Ct. App. 1988); *see generally David v. Am. Suzuki Motor Corp.*, 629 F. Supp. 2d 1309, 1322–23 (S.D. Fla. 2009) (canvassing Florida law).

WL 3109632 (S.D. Fla. April 5, 2018); *Weiss v. Gen. Motors LLC*, 418 F. Supp. 3d 1173, 1183 (S.D. Fla. 2019) (holding that a plaintiff can establish privity as a third-party beneficiary where the plaintiff "alleges that he purchased a vehicle from an authorized dealer who was an agent of [the manufacturer], he was the intended consumer of the vehicle, the dealership was not the intended consumer, and the warranty was intended to benefit the consumer, not the dealership").

A competing line of federal district court cases rejects any such "third-party beneficiary" exception to the privity requirement in Florida, ruling that "to establish contractual privity to state a breach of . . . warranty claim, plaintiffs must purchase the product at issue directly from the defendant." *Padilla v. Porsche Cars N.A., Inc.*, 391 F. Supp. 3d 1108, 1116 (S.D. Fla. 2019); *see also In re Takata Airbag Prod. Liab. Litig.*, 193 F. Supp. 3d 1324, 1346 (S.D. Fla. 2016) ("Mazda is an automotive distributor, not a dealer. [Plaintiff] could not have purchased his vehicle from Mazda. Thus, [Plaintiff] lacks privity with Mazda and the implied warranty claim must fail."); *Tershakovec v. Ford Motor Co.*, No. 17-21087-CIV, 2018 WL 3405245, at *10 (S.D. Fla. July 12, 2018) (dismissing breach of implied warranty claim under Florida law against Ford because Plaintiffs "purchased their vehicles from authorized Ford dealerships, not from Ford directly," and thus Plaintiffs "lack[ed] privity with Ford"); *David v. Am. Suzuki Motor Corp.*, 629 F. Supp. 2d 1309, 1322–23 (S.D. Fla. 2009) (dismissing breach of implied warranty claim under Florida law against American Suzuki or Suzuki Japan for lack of contractual privity because plaintiff "purchased his motorcycle from dealer Motorsports in Miami, not from American Suzuki or Suzuki Japan")); *Bailey v. Monaco Coach Corp.*, 168 F. App'x 893, 894 (11th Cir. 2006) (affirming district court's dismissal of implied warranty claim against manufacturer because plaintiff purchased motor home from a dealer, not manufacturer); *McKissic v. Country Coach, Inc.*, No. 07-1488-CIV, 2008 WL 616093, at *4 (M.D. Fla. March 03, 2008) (dismissing implied

warranty claim against manufacturer because Plaintiffs did not buy RV from manufacturer but rather from authorized dealer, "Plaintiffs cannot be in privity with Manufacturer unless they actually purchased the RV from Manufacturer," and "Plaintiffs have alleged no facts that they dealt with Manufacturer during the purchase of this RV").

Tracing backwards to better understand this split in federal district courts, it appears the line of cases that have applied the third-party beneficiary exception have relied on two main sources of Florida law, neither of which supports relaxing the requirement that a Florida plaintiff be in privity of contract with the defendant to recover economic losses on a breach of warranty theory.

Florida Statute Section 672.318, for example, which Plaintiff does not even invoke, provides that a seller's warranty extends to certain closely affiliated individuals of the warranty buyer such as members of the buyer's family or household who sustain personal injury as a result of the breach of warranty.[5]  That statutory provision plainly does not apply here; Plaintiff was not physically injured; she seeks only economic damages for the replacement cost of the tail lamp assembly [ECF No. 42 ¶ 63]; and more fundamentally, she is not claiming the benefit of a warranty on the basis of a personal household-or-similar-type relationship with the buyer of the warranty.

Nor does the background notion of a "third party beneficiary" exception to the privity requirement justify Plaintiff's position.  "As to breach of contract, the law is that a person not party to a contract may sue for breach of contract where the parties' dealings clearly express the parties' intent to create a right primarily and directly benefiting a third party."  *Warren v. Monahan*

---

[5] Fla. Stat. § 672.318 ("A seller's warranty whether express or implied extends to any natural person who is in the family or household of his or her buyer, who is a guest in his or her home or who is an employee, servant or agent of his or her buyer if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty.  A seller may not exclude nor limit the operation of this section.").

*Beaches Jewelry Ctr., Inc.*, 548 So. 2d 870, 872 (Fla. 1st Dist. App. 1989)) (citing Restatement (Second) of Contracts, Section 302(1)(b) (1979)); *see also Caretta Trucking, Inc. v. Cheoy Lee Shipyards, Ltd.*, 647 So. 2d 1028, 1031 (Fla. 4th Dist. App. 1994) ("A party is an intended beneficiary only if the parties to the contract clearly express, or the contract itself expresses, an intent to primarily and directly benefit the third party or a class of persons to which that party claims to belong."). "[I]n order to plead a cause of action for breach of a third party beneficiary contract, the following elements must be met: (1) a contract between A and B; (2) an intent, either expressed by the parties, or in the provisions of the contract, that the contract primarily and directly benefit C, the third party (or a class of persons to which that party belongs); (3) breach of that contract by either A or B (or both); and (4) damages to C resulting from the breach." *See Caretta Trucking*, 647 So. 2d at 1031.

These third-party beneficiary principles do not fit the warranty claims in this case [ECF No. 42 ¶ 109]. At bottom, the third-party beneficiary exception as adopted in the law of contracts operates by allowing a nonparty to a contract (the third-party beneficiary) to sue for breach of a contract between two other parties, where the contract clearly expresses an intent to benefit that nonparty. *See Warren*, 548 So. 2d at 872; *Caretta Trucking*, 647 So. 2d at 1031. That is not what is happening here. Plaintiff is already a party to the contract with the dealer from whom she received the warranty. She now seeks to sue a non-party to the warranty contract (GM, the manufacturer)—with whom she did not negotiate the sale of the car, and from whom she received no direct representations in the sale of the car—on the apparent theory that she is the beneficiary of unspecified "contractual relationships" between GM and its authorized agents to sell and service

vehicles [ECF No. 43 ¶ 62; *see* ECF No. 43 ¶¶ 42, 84, 95].[6]  Yet nothing in the FAC alleges that

such "contractual relationships," whatever they are, contemplate a clearly expressed intent to

benefit consumers like Plaintiff in the provision of a warranty services.  The third-party beneficiary

contract principles rooted in *Warren* and *Caretta Trucking* thus do not align here; Plaintiff

purchased the car from the dealership, not from GM; Plaintiff lacks any contractual privity with

GM; the only contract that has been alleged with any reasonable degree of specificity is the contract

between Plaintiff and the dealer [ECF No. 54-1; ECF No. 42 ¶ 57]; and whatever vague references

Plaintiff makes to unspecified "contractual relationships" between GM and its dealers, there is no

allegation of an actual contract between GM and the authorized dealer that confers a direct

warranty benefit on Plaintiff (or on a class of persons to which Plaintiff belongs).

Finally, to the extent that Plaintiff argues that she can show privity (or otherwise overcome

the privity requirement) through an alleged agency-principal relationship between GM and various

dealerships based on their status as "authorized GM dealers" [ECF No. 49 p. 13], that argument is

not consistent with Florida agency law.  As explained in *Ocana v. Ford Motor Co.*, 992 So. 2d 319

(Fla. 3d Dist. App. 2008), allegations that a car manufacturer permits a dealership to hold itself

out as an "authorized dealer" are insufficient to establish the existence of an agency-principal

relationship sufficient to invite breach-of-warranty liability on the manufacturer despite lack of

privity with the purchaser.  Here, Plaintiff alleges that various dealerships "were authorized to act

on GM's behalf with respect to selling and servicing Class Vehicles," and that "GM, as their

principal, was at all relevant times in control of [the dealerships'] day-to-day activities of

---

[6] Plaintiff alleges generally, and in entirely conclusory terms, that she "had sufficient direct dealings with *either* GM or its agents (e.g., dealerships and technical support) to establish privity of contract" [ECF No. 42 ¶¶ 95, 109 (emphasis added)].  She offers no supporting detail to plausibly suggest any direct dealings with GM.

marketing, advertising, selling, warranting, and servicing Class Vehicles according to GM's stated policies and procedures" [ECF No. 42 ¶ 62]. These allegations fall well short of the allegations in *Ocana*, which were themselves inadequate, and thus do not support an agency-principal relationship sufficient to circumvent Florida's privity requirement.[7]

Having endeavored to faithfully apply Florida law, the Court determines that actual privity of contract, not "finessed" privity, is required to sue a party for breach of warranty. *See In re Takata Airbag Prod. Liab. Litig.*, 193 F. Supp. 3d at 1346 ("Vukadinovic lacks privity with Mazda and the implied warranty claim must fail."). No one disputes that Plaintiff lacks such direct privity with GM here in this case. Counts Two and Three are therefore dismissed with prejudice, as any such amendment would run into the same lack-of-privity problem. *See generally Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001); *Padilla*, 391 F. Supp. 3d at 1119 (dismissing with prejudice for lack of contractual privity).[8]

---

[7] Specifically, in *Ocana*, the Court found that the complaint did not support an agency-principal relationship where the plaintiff alleged that the car manufacturer defendant exercised control over: "1) dealer location, size, and number of dealer logos on dealer's premises; 2) prizes given to dealer's employees; 3) number of bathrooms dealer must make available to the public; 4) training and certification of sales and service personnel; and also requires that its dealers 5) use manufacturer-supplied computer software; 6) report vehicle sales and sale details, including name and address of purchaser and related information, to manufacturer; 7) provide warranty service paid for by Ford Motor Company; and 8) afford Ford the right to enter the dealer's business premises to audit the records and operations of the dealership as to sales and service" but stopped short of alleging the manufacturer had the "ability of the principal to hire, fire, or supervise dealership employees or dealer ownership." 992 So. 2d at 326 (citing *Ortega v. Gen. Motors Corp.*, 392 So. 2d 40, 44 (Fla. 4th Dist. App. 1980)) (finding no actual or apparent agency relationship between manufacturer and dealer, where dealer "displayed signs advertising that it sold GMC trucks, parts, and accessories).

[8] Furthermore, Plaintiff has not identified any other allegations she could add that would adequately support an agency-principal relationship. *See Ocana*, 992 So. 2d at 326.

### B.      MMWA Claim (Count One)

Defendant also seeks dismissal of Plaintiff's claim for violation of the MMWA (Count One), arguing that Count One cannot proceed because Plaintiff failed to plead a viable state law warranty claim [ECF No. 47 p. 21].  "[A] Magnuson–Moss Warranty Act claim only exists if a valid breach of warranty claim is also stated."  *Melton v. Cent. Arms, Inc.*, 243 F. Supp. 3d 1290, 1304 (S.D. Fla. 2017) (citing *Bailey*, 168 F. App'x at 894 n.1).  Because the Court hereby dismisses Plaintiff's state law breach of warranty claims for the reasons stated above (Counts Two and Three), Plaintiff's claim under the Magnuson-Moss Warranty Act (Count One) fails as well.

### C.      FDUTPA Claim (Count Four)

#### 1.      Statute of Limitations

GM argues that Count Four, which alleges violations of FDUTPA under Fla. Stat. §§ 501.201, *et seq.*, is barred by the four-year statute of limitations pursuant to Fla. Stat. § 95.11(3)(f) [ECF No. 47 pp. 22–23].  Plaintiff responds that her claim is not time barred based on the doctrine of fraudulent concealment—which tolls the statute of limitations where a defendant willfully conceals a cause of action—because the Technical Services Bulletin and SCA purportedly misled consumers about the full extent of the defect [ECF No. 49 pp. 21–22 (citing *Lewis v. Mercedes-Benz USA, LLC*, 530 F. Supp. 3d 1183, 1230 (S.D. Fla. 2021))].  Even if GM did not fraudulently conceal any alleged wrongdoing, Plaintiff continues, the statute of limitations does not bar Count Four to the extent it relies on the November 2019 SCA as the deceptive act, because such act was within the limitations period [ECF No. 49 p. 20].

"The statute of limitations for a FDUTPA claim is four years pursuant to section 95.11(3)(f), Florida Statutes, as it is based on a statutory liability."  *See Brown v. Nationscredit Fin. Servs. Corp.*, 32 So. 3d 661, 662 n. 1 (Fla. 1st Dist. App. 2010) (citing Fla. Stat. § 95.11(3)(f)).

Under the doctrine of fraudulent concealment, "the statute of limitations will be tolled when it can be shown that fraud has been perpetrated on the injured party sufficient to place him in ignorance of his right to a cause of action or to prevent him from discovering his injury." *Nardone v. Reynolds*, 333 So. 2d 25, 39 (Fla. 1976).  To toll the statute of limitations as a result of fraudulent concealment, a plaintiff "must allege . . . (1) successful concealment of the cause of action, (2) fraudulent means to achieve that concealment, and (3) [that] plaintiff exercised reasonable care and diligence in seeking to discover the facts that form the basis of his claim." *Burr v. Philip Morris USA, Inc.*, No. 8:07-CV-01429, 2012 WL 5290164, at *10–11 (M.D. Fla. Sept. 28, 2012) (citing *Berisford v. Jack Eckerd Corp.*, 667 So. 2d 809, 811–12 (Fla. Dist. Ct. App. 1995)). "Critically, however, 'the fraudulent means alleged must go beyond mere non-disclosure, and must constitute active and willful concealment.'" *Lewis v. Mercedes-Benz USA, LLC*, 530 F. Supp. 3d 1183, 1229 (S.D. Fla. 2021) (quoting *Licul v. Volkswagen Grp. of Am., Inc.*, No. 13-61686, 2013 WL 6328734, at *6 (S.D. Fla. Dec. 5, 2013)).

Here, Plaintiff alleges that GM committed two "unfair and deceptive acts" within the meaning of FDUTPA, Fla. Stat. § 501.204(1): (1) GM failed to disclose the defect at the time of the vehicle purchase on February 21, 2017, and (2) GM issued a misleading SCA in May 2020, which itself constituted an unfair trade practice [ECF No. 42 ¶¶ 116–18; ECF No. 49 p. 20]. Because the second trade "act" falls within the limitations period, it is not time-barred. The question, then, is whether, as GM argues, the first alleged unfair trade act, which occurred over four years prior to Plaintiff's action, is barred under the statute of limitations, or whether, as Plaintiff posits, the limitations period is tolled by the fraudulent concealment doctrine.  The Court agrees with GM.

To support her fraudulent concealment theory as connected to the first trade act, Plaintiff cites two instances of "concealing" behavior by GM: first, failing to specifically attribute the condensation problem identified in the December 2018 Technical Services Bulletin to the tail lamp design defect and, second, "not including 2017 Class Vehicles in the initial [November 2019] SCA, despite already knowing that the 2017 vehicles were subject to the same defect" [ECF No. 49 p. 21].   Plaintiff alleges that GM issued the 2018 Technical Services Bulletin 01-08-42-001L, in which GM acknowledged that all 2019 and prior GM vehicles suffered a condensation problem [ECF No. 42 ¶ 28].   The November 2019 SCA extended vehicle warranties for 2015-2016 Yukon vehicles to cover the defective tail lamps for 6 years or 72,000 miles [ECF No. 42 ¶ 2].   According to Plaintiff, the 2018 Technical Services Bulletin was fraudulent because it did not ascribe the cause of that problem to a defective tail lamp design [ECF No. 42 ¶ 75].   Likewise, Plaintiff contends that GM's issuance of the initial SCA in 2019 was fraudulent because it was limited to 2015-2016 Yukon vehicles only despite GM's alleged knowledge that the 2017 vehicles shared the same defect [ECF No. 42 ¶¶ 76–77].   Plaintiff also argues that GM engaged in fraudulent concealment by "explicitly and affirmatively instructing" its customers to forego bringing their vehicles in for maintenance based on the following sentence in the SCA: "Do not take your vehicle to your GM dealer as a result of this letter unless you believe that your vehicle has the condition as described above" [ECF No. 49 p. 21; *see* ECF No. 53-2 p. 6; ECF No. 53-4 p. 2].

Neither of the purported instances of "concealing" conduct cited by Plaintiff establishes a "fraudulent means" to conceal the tail lamp defect.   In both of these instances, GM made public disclosures to acknowledge and address problems with the vehicles.   *See Padilla v. Porsche Cars N.A., Inc.*, No. 18-24988-CIV, 2020 WL 1472301, at *4 (S.D. Fla. Mar. 26, 2020) (finding that

allegations "based on public disclosures" could not be used to "invoke fraudulent concealment to toll the statute of limitations") (citing *Padilla v. Porsche Cars N.A., Inc.*, 391 F. Supp. 3d 1108, 1115 (S.D. Fla. 2019) ("These public disclosures are the opposite of fraudulent concealment."); *see also Heuer v. Nissan N.A., Inc.*, No. 17-60018-CIV, 2017 WL 3475063, at *7 (S.D. Fla. Aug. 11, 2017) (noting that statements made by defendant "may be viewed as a public admission . . . that there is a defect in their vehicle, which would negate any claims of fraudulent concealment"). Thus, Plaintiff's allegations of "concealing" conduct based on GM's issuance of the 2018 Technical Services Bulletin and the 2019 SCA do not amount to "nondisclosure," "which itself is insufficient to toll the statute of limitations under Florida law." *Padilla*, 391 F. Supp. 3d at 1115 (citing *Speier-Roche v. Volksw Agen Group of Am. Inc.*, No. 14-20107-CIV, 2014 WL 1745050, at *7 (S.D. Fla. Apr. 30, 2014)).

Moreover, even if the 2018 Technical Services Bulletin and the 2019 SCA did not fully represent the full scope of the tail lamp problem, as Plaintiff asserts, they do not include any affirmative misrepresentations approximating the sort of active and willful concealment sufficient to toll the statute of limitations. For example, construing the Technical Services Bulleting as alleged in the FAC, it "define[d] the causes of condensation in exterior lamps and include[d] guidelines for determining the difference between a lamp with normal atmospheric condition (condensation) and a lamp with a water leak"—but did not describe the condensation problem as caused by defective design [ECF No. 42 ¶ 75]. Likewise, the SCA advises purchasers not to take their vehicles in for repair or replacement "unless you believe that your vehicle has the condition as described above" [ECF No. 53-2 p. 6]. Neither of these documents as alleged demonstrates any affirmative misrepresentation or outright falsity. Rather, at most, all that Plaintiff alleges is that GM, by issuing the Technical Services Bulletin and SCA, made representations to consumers

regarding the tail lamp defect that were not as complete or proactive as Plaintiff would have liked. Such allegations do not amount to active and willful concealment as required to toll the statute of limitations under the doctrine of fraudulent concealment.[9]

For these reasons, Plaintiff has not adequately alleged fraudulent concealment sufficient to toll the statute of limitations for the first alleged unfair trade act (failing to disclose the defect at the time Plaintiff purchased the vehicle). That aspect of Plaintiff's FDUPTA claim is therefore barred by the statute of limitations—leaving as timely Plaintiff's FDUPTA claim as based on the 2019 SCA.

### 2.    Failure to State a Claim

The Court next considers whether Count Four adequately states a claim for violating FDUTPA relating to the 2019 SCA itself. GM argues that Count Four fails to state a claim under Rule 12(b)(6) and fails also to satisfy the heightened pleading requirements of Rule 9(b) as to GM's knowledge [ECF No. 47 pp. 23–27]. Plaintiff responds with two points: Rule 9(b) does not apply to FDUTPA claims, and the FAC adequately alleged a FDUTPA claim by alleging that

---

[9] This conclusion accords with caselaw applying the fraudulent concealment doctrine under Florida law. *See Licul*, 2013 WL 6328734, at *6 (citing *Raie v. Cheminova, Inc.*, 336 F.3d 1278, 1282 n.1 (11th Cir. 2003)) (finding that allegations that a car manufacturer failed to warn the public or notify car purchasers of a door lock defect were "based on inaction and non-disclosure" and thus were "wholly insufficient to supply the affirmative steps taken to prevent Plaintiffs from discovering the basis of their claims that would be necessary before tolling based on fraudulent concealment becomes appropriate"); *Lewis*, 530 F. Supp. 3d at 1230 (finding that plaintiff's generalized claims of concealment were conclusory and unsupported by factual allegations demonstrating affirmative steps to conceal the defect, where plaintiffs alleged that a car manufacturer issued a technical service bulletin describing a car defect as a "short circuit in the wiring"); *Raie*, 336 F.3d at 1282 n.1 (citing *Berisford*, 667 So. 2d at 811–12) (finding that plaintiffs did not adequately allege that defendant used a fraudulent means to conceal, as required to meet the doctrine of fraudulent concealment, where the complaint did not allege any specific acts of affirmative misrepresentation or concealment).

GM's alleged unfair trade acts relating to the SCA were likely to deceive a reasonable consumer [ECF No. 49 pp. 22–24].

The Florida Deceptive and Unfair Trade Practices Act (FDUTPA) provides a cause of action for "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1). To state a claim under FDUTPA a plaintiff must sufficiently allege the following elements: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Dolphin LLC v. WCI Communities, Inc.*, 715 F.3d 1243, 1250 (11th Cir. 2013) (citing *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. Dist. Ct. App. 2006)).

The core issue here is the first element. Under FDUTPA, "a deceptive practice is one that is 'likely to mislead' consumers," and the test is "whether the practice was likely to deceive a consumer acting reasonably in the same circumstances." *Davis v. Powertel, Inc.*, 776 So. 2d 971, 974 (Fla. 1st Dist. App. 2000).

The FAC describes GM's alleged unfair trade act relating to the SCA as follows:

> GM committed a further act of deception in connection with the SCA. At the time of the SCA, while purporting to offer a customer service, GM knew and failed to disclose that the Tail Lamp Assembly had a design defect which could not be remedied without a design change. Rather than fixing the problem, GM offered to replace the Tail Lamp Assembly with the same defectively designed Tail Lamp Assembly and limited the warranty time period to six years/60,000 miles. If GM used a newly designed and improved Tail Lamp Assembly as the replacement, there is no legitimate reason why GM limited the warranty time period to 6 years/60,000 miles.

[ECF No. 42 ¶ 117].

The FAC fails to adequately plead a deceptive act or unfair trade practice for three reasons.

First, although Plaintiff alleges that replacement by GM was inadequate, the SCA offered to reimburse consumers for repairs they paid for elsewhere [ECF No. 42 ¶ 2 ("GM . . . issu[ed] a

Special Coverage Adjustment ("SCA") whereby GM offered to replace the inoperative tail lamps at no charge, **reimburse** vehicle owners and lessees who paid for repairs, and cover the replacement for 6 years or 72,000 miles.") (emphasis added)]. Thus, because consumers could independently get repairs and still be reimbursed by GM under the SCA, Plaintiff's allegation that replacement by GM was inadequate is insufficient to plead an unfair trade practice.

Second, Plaintiff's allegation that there is "no legitimate reason why GM limited the warranty time period to 6 years/60,000 miles" does not adequately allege an unfair trade practice. This bare and conclusory statement essentially reasserts Plaintiff's express warranty claim, which characterized the warranty as unconscionable because it was not long enough. Plaintiff does not provide any authority demonstrating that an allegation of inadequate warranty length can establish an unfair trade practice under FDUTPA, let alone such an allegation based on a 6-year automotive warranty.

Third, Plaintiff alleges that the SCA was misleading because it discouraged consumers from bringing their car in to a GM dealership until after the defect manifested [ECF No. 42 ¶ 47; *see* ECF No. 53-2 p. 6; ECF No. 53-4 p. 2 ("Do not take your vehicle to your GM dealer as a result of this letter unless you believe that your vehicle has the condition as described above.")]. As referenced above, such allegation of fraud is also conclusory and does not sufficiently allege an unfair trade practice. Indeed, the allegedly offensive sentence at issue does not, as Plaintiff contends, actually tell purchasers to "delay bringing in their vehicles until after they already experience a safety problem" [ECF No. 42 ¶ 47]. It merely tells the purchaser not to bring in their vehicle "unless you believe that your vehicle has the condition described" [ECF No. 53-2 p. 6]. Viewing this statement in the context of the full SCA, the Court finds that Plaintiff has failed to plausibly allege that the SCA was likely to mislead a reasonable consumer. *See Davis*, 776 So. 2d

at 974.  Thus, because Plaintiff's allegations relating to the SCA did not adequately allege a deceptive act or unfair practice, Plaintiff failed to state a claim under FDUTPA.  Dismissal of Count Four is warranted.  The Court need not address GM's other arguments for dismissing Count Four based on other elements or Rule 9(b).

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** as follows:

1.  Defendant's Motion to Dismiss Plaintiff's First Amended Complaint [ECF No. 47] is **GRANTED**.

2.  Counts One through Three of Plaintiff's First Amended Complaint [ECF No. 42] are **DISMISSED WITH PREJUDICE**.  Amendment of these counts is not warranted because any such amendment would run into the same dispositive privity problem.  *See generally Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001).

3.  Count Four of Plaintiff's First Amended Complaint [ECF No. 42] is **DISMISSED WITHOUT PREJUDICE**.  For the reasons stated in this Order, the Court is doubtful that Plaintiff could state a plausible FDUPTA claim on the basis of the allegations presented but nevertheless will give Plaintiff one final opportunity to file an amended pleading for the limited purpose of asserting a FDUPTA claim.[10]

4.  Plaintiff may file an amended complaint **in accordance with this Order**, on or before **June 10, 2022**.

---

[10] Plaintiff amended its original complaint following an earlier Motion to Dismiss that raised essentially the same arguments in the instant Motion [ECF No. 26 pp. 22–27].

CASE NO. 21-81146-CIV-CANNON

**DONE AND ORDERED** in Chambers at Fort Pierce, Florida this 24th day of May 2022.

**AILEEN M. CANNON**
**UNITED STATES DISTRICT JUDGE**

cc:     counsel of record